IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | NO. 20-CR-210 |
| MICHAEL "OZZIE" MYERS | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS THREE, FOUR, FIVE, SEVEN AND EIGHT OF THE INDICTMENT**

The United States of America, by its attorneys, William M. McSwain, United States Attorney for the Eastern District of Pennsylvania, and the undersigned attorneys, hereby responds to defendant's pretrial motion to dismiss counts in the indictment. ECF No. 18.

## I. INTRODUCTION

In this case, former U.S. Congressman Michael "Ozzie" Myers is charged by indictment with conspiring to violate voting rights by fraudulently stuffing the ballot boxes – also known as ringing up votes - for specific political candidates in the 2014, 2015, and 2016 primary elections, bribery of an election official, falsification of records, voting more than once in federal elections, and obstruction of justice. ECF No. 1 (Indict.).

### Myers' Consulting Business

As charged in the indictment, defendant Michael "Ozzie" Myers was a political consultant who "held himself out as an effective and successful political operative capable of ensuring his clients' electoral success." *Id*. Count One, ¶ 1. Myers "exercised influence and control in Philadelphia's 39th Ward by distributing cash payments and supporting family, friends, and allies for elective office in the 39th Ward, and installing Ward Leaders, Judges of

1

Elections, and Democratic State Committee Persons." *Id*.

### Official Election Records and Vote Tallies

As detailed in the indictment, "each polling station, including the 39th Ward, 36th Division, maintains a List of Voters and Party Enrollment, which documents the name, party affiliation, and order of appearance of each voter who appears at the polling station to cast his or her ballot in the election." *Id*. at ¶ 5. These official election records "are maintained as official records by the Philadelphia City Commissioners." *Id*.

The Voting Machines at each polling station, "generate records in the form of a printed receipt ("results receipt") documenting the use of each Voting Machine that contains: a) the Opening Zero Count, b) the Election Board Officials' Opening Certification signatures, c) any Write-in Votes, and d) Vote Totals." *Id*. at ¶ 6. Election officials at "each polling place attest to the accuracy of machine results by affixing their signatures to the last page of the results receipt." *Id*. After the polls close and in-person voting has ended, the official records are stored and maintained at the office of the Philadelphia City Commissioners. *Id*. at ¶ 7.

### Bribing the Judge of Elections

Myers is alleged to have bribed Domenick Demuro, the Judge of Elections for the 39th Ward, 36th Division in Philadelphia, in a fraudulent ballot stuffing scheme over several years. *Id*. at ¶ 11. According to the indictment, the Judge of Elections is an elective office and a paid position and the official was responsible for overseeing the entire election process and voter activities of his Division. Id. at ¶ 3. Specifically, Myers is charged with bribing the Judge of Elections to illegally add votes for certain political candidates. *Id*. at ¶ 12. These candidates were individuals running for judicial office whose campaigns had hired the consultant, as well as

other candidates for various federal, state, and local elective offices who were preferred by this consultant for a variety of reasons. *Id*. at ¶ 9. According to the indictment, Myers would solicit monetary payments from his clients, candidates for elective office, in the form of cash or checks as "consulting fees." *Id*. at ¶ 11. Myers would then take portions of these funds from his clients and make payments to Election Board Officials, including Demuro, in return for Demuro and other Election Board officials tampering with the election results. *Id*.

In the run up to Election Day, Myers would relay instructions to Demuro via cellular telephones capable of interstate transmissions, regarding which candidates Demuro should "ring up" or add fraudulent votes for during Election Day in the 39th Ward, 36th Division. *Id*. at ¶ 13.

After the polls closed on Election Day, Demuro was required to certify the Voting Machine results from the 39th Ward, 36th Division, by falsely attesting to the accuracy of the paper results receipt placed in the Cartridge-Results Bag with the memory cartridge from each Voting Machine for delivery to the City Commissioners. *Id*. at ¶ 14. The Machine Receipts reflected the false vote totals because they included the fraudulently added votes cast by Demuro and others.

**2014 Primary**

On May 20, 2014, Demuro and others added 27 fraudulent ballots during the primary election in the 39th Ward, 36th Division, on behalf of Myers' preferred candidates running for federal, state, local, and party offices. *Id*. at Overt Acts ¶ 1. In other words, according to the numbers documented in the machine results, 118 voters exercised the franchise on Primary Election Day. *Id*. at Overt Acts ¶ 2. Demuro certified a fraudulent Results Receipts from the voting machines documenting 118 ballots cast during the primary election in the 39th Ward, 36th

Division, even though only 91 voters physically appeared at the polling station to cast ballots. *Id*.

After the polls closed, Demuro turned in to the office of the Philadelphia City Commissioners the Results Receipts from voting Machine # 021873 and Machine # 021874, documenting 118 ballots cast during the primary election in the 39th Ward, 36th Division, even though only 91 voters physically appeared at the polling station to cast ballots as reflected in the polling book. *Id*. at Overt Acts ¶ 3.

## 2015 Primary

According to the indictment, on May 19, 2015, Demuro "added 40 fraudulent ballots during the primary election in the 39th Ward, 36th Division" on behalf of Myers' client candidates running for Common Pleas Judge in the First Judicial District of Pennsylvania and Myers' preferred candidates for other state and local offices. *Id*. at Overt Acts ¶ 8.

After the polls closed, Demuro and his Election Board turned in to the office of the Philadelphia City Commissioners the Results Receipts from voting Machine # 021873 and Machine # 021874. *Id*. at Overt Acts ¶ 10. The Results Receipts from the machines documented 259 ballots cast during the primary election in the 39th Ward, 36th Division, even though only 219 voters physically appeared at the polling station to cast ballots, as reflected in the polling book. *Id*.

## 2016 Primary

As charged in the indictment, on April 26, 2016, Demuro and others added 46 fraudulent ballots during the primary election in the 39th Ward, 36th Division, on behalf of Myers' "preferred candidates running for election to federal, state, and local offices." *Id*. at Overt Acts

4

¶ 12. After the polls closed, Myers called Demuro multiple times to confirm that fraudulent votes had been added to support Myers' clients and preferred candidates. *Id*. at Overt Acts ¶ 13. That same day, Demuro turned in the results receipts from voting Machine #021873 and Machine #021874 "documenting 266 ballots cast during the primary election in the 39th Ward, 36th Division, even though only 220 voters physically appeared at the polling station to cast ballots." *Id*. at Overt Act ¶ 14

## II. <u>ARGUMENT</u>

The federal pleading rules require that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). In the Third Circuit, an indictment is facially sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007). Though an indictment "must allege more than just the essential elements of the offense," *id*., "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution," *United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011) (internal quotation marks and citation omitted).

The defendant's motion requests dismissal of various counts charged in the indictment, presumably pursuant to Federal Rule of Criminal Procedure 12. "In evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir.), *cert. denied*, 133 S. Ct. 422

(2012).  This is because factual questions are left to the jury, and therefore "a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence."  *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000).  Ultimately, "[a]n indictment returned by a legally constituted and unbiased grand jury…if valid on its face, is enough to call for trial of the charge on the merits."  *Costello v. United States*, 350 U.S. 359, 363 (1956).

A motion to dismiss based on the sufficiency of the indictment must be denied unless "the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation."  *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir.), *cert. denied*, 537 U.S. 819 (2002), *error coram nobis granted on other grounds*, 2011 WL 3274044 (E.D. Pa. Aug. 1, 2011).

In this case, the indictment sets forth the statutory language of each offense and provides a detailed account of the defendant's activities and the overt acts taken in furtherance of the conspiracy charged in Count One.  These allegations more than adequately plead the elements of each offense charged and easily satisfy the defendant's need to prepare for trial and identify the contours of the case against him.  Accordingly, the defendant's motion to dismiss should be denied.

**Counts Two and Four**
**18 U.S.C. §§ 1952 and 2[1]**

Defendant first takes aim at the alleged violations of 18 U.S.C. § 1952 (Travel Act) in Counts Two and Four.[2] The indictment alleges that Myers made multiple bribe payments to Demuro in advance of or at the start of Primary Election Day in 2015 and 2016, and then relayed additional instructions and discussed the execution of the ballot-box stuffing scheme with Demuro via cellular telephone, even on Election Day itself. ECF No. 1, Count One, ¶ 13, Overt Acts ¶¶ 7, 9, 11, 13, Count Two ¶¶ 1, 3.[3] Demuro, after discussing with Myers the scheme and his instructions via cellular telephone, added fraudulent votes pursuant to Myers' bribery scheme. *Id*. at Count One, Overt Acts ¶¶ 8, 12. After the close of the polls, Demuro submitted the corrupted vote tallies to the City Commissioners. *Id*. at Count One, Overt Acts ¶¶ 10, 14.

The Travel Act, 18 U.S.C. § 1952 prohibits interstate travel, the use of any other facility (such as a cellular telephone) capable of use interstate, and any use of the mails to further

---

[1] Counts Two and Four (and Counts Three and Five through Eight) place Myers on notice that he is also charged via "aiding and abetting," in violation of 18 U.S.C. § 2. 18 U.S.C. § 2 provides that those who aid and abet, or counsel, command, or induce the commission of a crime may be charged and punished as if they had personally or directly committed the crime. Aiding and abetting is not a separate offense, but rather is an alternative theory of culpability. A defendant need not be indicted specifically as an aider and abettor or an accomplice in order to be convicted on that theory. *United States v. Donahue*, 885 F.2d 45, 48 (3d Cir. 1989). Moreover, charging a defendant as an aider and abettor and as a principal in the same event is not duplicitous. *United States v. Garcia*, 400 F.3d 816, 820 9th Cir. 2005); United States v. Dean, 969 F.2d 187, 195 (6th Cir. 1992).

[2] Curiously, defendant's motion does not reference Count Two. However, his legal argument regarding the application of 18 U.S.C. § 1952 would seem to apply to Count Two as well as Count Four were he correct on the law. He is not.

[3] Paragraphs 1 through 9 and 11 through 15 and Overt Acts 1 through 10 of Count One are incorporated into Count Two by reference. ECF No. 1, Count Two ¶ 1. Paragraphs 1 through 9 and 11 through 15 and Overt Acts 1 through 14 of Count One are incorporated by reference into Count Four. *Id*. Count Four ¶ 1.

specified unlawful activity or "otherwise promote, manage, establish, carry on, or facilitate" bribery "in violation of the laws of the State in which they are committed or of the United States." 18 U.S.C. § 1952(a)(3), (b). The Travel Act broadly prohibits the use of the mails, travel in interstate or foreign commerce, and the use of facilities in interstate or foreign commerce, for the purpose of committing or assisting in the commission of various crimes

In order to prove that defendant violated 18 U.S.C. § 1952, the government must prove the following elements beyond a reasonable doubt:

> First: Interstate/international travel, use of the mails, or the use of the facilities of interstate/foreign commerce (such as an email server capable of use interstate);
>
> Second: With the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on, of any unlawful activity;
>
> Third: Subsequent performance or attempted performance of an act, as defined by the statute.

*See generally United States v. Bencivengo*, 749 F.3d 205, 213-214 (3d Cir. 2014); *United States v. Xiong*, 262 F.3d 672, 676 (7th Cir. 2001); *United States v. Garcia*, 78 F.3d 1517, 1522 (11th Cir. 1996); *United States v. Fetlow*, 21 F.3d 243, 247 (8th Cir. 1994); *United States v. Winslow*, 962 F.2d 845, 852 (9th Cir. 1992).

Myers' sole argument for dismissal regarding the alleged Travel Act violations is that the cellular device referenced in the indictment must be used interstate as opposed to being "capable" of interstate transmissions. *See* ECF No. 1, Count One ¶ 13. As Myers himself acknowledges, ECF No. 18 at 9, his argument is foreclosed by the weight of authority across the country. *See United States v. Halloran,* 821 F.3d 321, 342 (2d Cir. 2016) ("Purely intrastate use of an interstate facility is sufficient to violate the Travel Act."); *United States v. Nader*, 542 F.3d

713, 720 (9th Cir. 2008) (in the context of a prosecution for a violation of the Travel Act, intrastate telephone calls involve the use of a facility "in" interstate commerce); *See also United States v. Marek*, 238F.3d 310, 317-18 (5th Cir. 2001) (any use of the mails, including intrastate mailings, falls within the prohibitions of the statute); *See also United States v. Heacock*, 31 F.3d 249, 255 (5th Cir.1994) (intrastate use of the mail supports a violation of the Travel Act); *United States v. Riccardelli*, 794 F.2d 829, 831 (2d Cir. 1986) (same). This Court should reject Myers' request to dismiss Counts Two and Four.

**Counts Three and Five**
**18 U.S.C. §§ 1519 and 2**

Next, defendant Myers argues that Counts Three and Five[4] alleging the falsification of records in violation of 18 U.S.C. § 1519 should be dismissed because there is "no evidence of any attempt to conceal or destroy any record, document, or tangible object." ECF No. 18 at 4-5. Defendant's argument fails.

Title 18 U.S.C. § 1519 makes it a crime to "knowingly…make[] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States…or in relation to or contemplation of any such matter." This crime has three elements:

---

4 Again, Myers directs this specific attack at a single count, in this case Count Three. ECF No. 18 at 4-5. However, his legal argument, if accepted, would undermine Count Five as well.

> First: The defendant knowingly falsified a document;
>
> Second: The document related to a matter within the jurisdiction of a federal agency; and
>
> Third: The defendant falsified the document with the intent to impede, obstruct, or influence the investigation or the proper administration of the matter.

*See United States v. Moyer*, 674 F.3d 192, 210 (3d Cir. 2012). In interpreting the legislative history of this statute, the Third Circuit has concluded the intent requirement to be independent of the jurisdiction requirement. In *Moyer*, the Court concluded that § 1519 "is meant to apply broadly to any acts to destroy or *fabricate* physical evidence so long as they are done with the intent to obstruct, impede or influence the investigation or *proper administration of any matter*, and such matter is within the jurisdiction of an agency of the United States." *Id*. *quoting* S.Rep. No. 107–146, at 14 (2002) (emphases added).

> The Senate Report goes on to clarify: "[t]his statute is specifically meant not to include any technical requirement, which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter." *Id*. at 14–15; *see also* 148 Cong. Rec. S7419 (daily ed. July 26, 2002) (statement of Sen. Patrick Leahy) ("The fact that a matter is within the jurisdiction of a federal agency is intended to be a jurisdictional matter, and not in any way linked to the intent of the defendant.").
>
> Thus, we conclude that the government [is] required only to prove that (1) [defendant] intended to impede an investigation into "any matter" and (2) the matter at issue was ultimately proven to be within the federal government's jurisdiction. It was not required to prove that [defendant] intended to obstruct or impede a specific federal investigation.

*Moyer*, 674 F.3d at 209-210.

The indictment alleges that Myers, Demuro, and others knowingly generated false records from the Voting Machines in order to tamper with the proper administration of the election in an effort to sway the result. In fact, in this ballot stuffing scheme, Myers and his

10

accomplices could not succeed in tampering with the election results absent the addition of the phony votes for Myers' preferred candidates deliberately recorded by Demuro. Here, the Results Receipts generated as official records by the Voting Machines were necessarily false as they documented the votes fraudulently "rung up" by Demuro and his Election Board at the direction of Myers. The Results Receipts generated by the machines contain obvious and flagrant discrepancies between the number of ballots cast and the number of voters who physically appeared at the polling station on the Election Day as documented in the actual polling books where real voters were required to affix their signatures. Myers and Demuro clearly intended that the falsified votes as reflected in the machine-generated records influence the proper administration of the election.

Civil rights, voter fraud, and election crimes are clearly within the jurisdiction of the Department of Justice and the Federal Bureau of Investigation. *See Moyer*, *supra*, 674 F.3d 206 (holding that falsification of police records pertaining to an investigation of a racially motivated killing is clearly within jurisdiction of FBI and therefore subject to of 18 U.S.C. § 1519); *United States v. Gonzalez*, 906 F.3d 784, 794 (9th Cir. 2018) (holding that law enforcement officers' violation of detainee's civil rights falls within federal jurisdiction and is thus covered by 18 U.S.C. § 1519); *United States v. Rowland*, 826 F.3d 100, 105 (2d Cir. 2016) (affirming conviction under 18 U.S.C. § 1519 of former governor who created false documents to obscure his provisioning of political consulting services in violation of Federal Election Commission rules); *United States v. Gray*, 642 F.3d 371, 372 (2d Cir. 2011) (holding that an allegation of excessive use of force at a private prison contracted by the federal government involves a "matter within the jurisdiction" of the Justice Department for purposes of 18 U.S.C. § 1519);

*United States v. Hunt*, 526 F.3d 739, 745 (11th Cir. 2008) (holding that making false statements regarding allegations of excessive force in police report qualifies as violation of 18 U.S.C. § 1519 because use of excessive force by local police departments is subject to investigation by FBI); *United States v. Fitts*, No. 19 CR. 341 (RA), 2019 WL 3409866, at *3 (S.D.N.Y. July 29, 2019) (noting that "violations of an individual's constitutional rights by public employees acting under color of law are matters within the jurisdiction of a department or agency of the United States, namely the Department of Justice").

Myers next argues that Count Five alleging a violation of § 1519 fails because there "is no evidence that defendant knew, should have known or contemplated an investigation." ECF No. 18 at 5.[5] Such knowledge is irrelevant. *United States v. Yielding*, 657 F.3d 688, 712 (8th Cir. 2011) (holding that, for purposes of 18 U.S.C. § 1519, the government need not prove that the defendant knew his actions were likely to affect a federal matter; rather, "[i]t is sufficient that the 'matter' is within the jurisdiction of a federal agency as a factual matter"); *United States v. Cooper*, 482 F.3d 658, 664–65 (4th Cir. 2007) ("It is well settled that mens rea requirements typically do not extend to the jurisdictional elements of a crime—that 'the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute.'"); *United States v. Ionia Management S.A.*, 526 F. Supp.2d 319, 329 (D. Conn. 2007) (observing that 18 U.S.C. § 1519 does not require that defendants be aware of a federal proceeding). Even at trial, "[t]he government . . . need not prove that [defendant] actually knew that the 'matter' at issue was within the jurisdiction of the

---

5 Again, this legal argument would seem to pertain to Count Three as well. In any event, the argument is without merit.

12

federal government when he falsified documents. It need only prove that he knowingly falsified documents." *Moyer, supra*, 674 F.3d 210. The Section 1519 charges should not be dismissed.

### Count Seven
### 51 U.S.C. §§ 10307 and 2

Myers next argues that Count Seven should be dismissed because "[n]o evidence was submitted to the Grand Jury that Defendant directly or conspired with another [to give] false information as to name, address or period of residency to establish eligibility to vote." ECF No. 18 at 7. His argument is predicated upon a misreading of the statute.

Title 52 § 10307(c)[6] provides that:

> Whoever knowingly or willfully gives false information as to his name, address or period of residence in the voting district for the purpose of establishing his eligibility to register or vote, ***or conspires with another individual for the purpose of*** encouraging his false registration to vote ***or illegal voting***, or pays or offers to pay or accepts payment either for registration to vote or for voting shall be fined not more than $10,000 or imprisoned not more than five years, or both: Provided, however, that this provision shall be applicable only to general, special, or primary elections held solely or in part for the purpose of selecting or electing any candidate for the office of President, Vice President, presidential elector, Member of the United States Senate, Member of the United States House of Representatives, Delegate from the District of Columbia, Guam, or the Virgin Islands, or Resident Commissioner of the Commonwealth of Puerto Rico.

52 § 10307(c) (emphasis added).

Subsection (e) of § 10307 ("Voting more than once") states that:

(1) ***Whoever votes more than once*** in an election referred to in paragraph (2) shall be fined not more than $10,000 or imprisoned not more than five years, or both.

(2) The prohibition of this subsection applies with respect to any general, special, or primary election held solely or in part for the purpose of selecting or electing any candidate for the office of President, Vice President, presidential elector, Member of the United States Senate, Member of the United States House of

---

6 The federal statute at issue in Count Seven was formerly housed in Title 42 of the United States Code until September 1, 2014, when it was transferred to Title 52. The prohibited acts at issue in Title 52 U.S.C. were originally defined in 42 U.S.C. §1973i.

Representatives, Delegate from the District of Columbia, Guam, or the Virgin Islands, or Resident Commissioner of the Commonwealth of Puerto Rico.

52 § 10307(e) (emphasis added). The conspiracy provision of § 10307(c) applies to section (e)'s "illegal voting clause," which criminalizes precisely the type of conduct here in federal elections. *See United States v. Olinger*, 759 F.2d 1293, 1298–1300 (7th Cir.1985).

Defendant Myers is charged in Count Six with a substantive violation of illegal voting in violation of 52 U.S.C. § 10307(e). Section 10307(e) has been used to prosecute a wide range of election frauds that do not involve the participation of voters in the balloting acts. Examples of such frauds are schemes to cast ballots in the names of voters who were deceased or absent, *Olinger*, 759 F.2d at 1297; schemes to exploit the infirmities of the mentally handicapped by casting ballots in their names, *United States v. Odom*, 736 F.2d 104, 106 (4th Cir. 1984); and schemes to cast absentee ballots in the names of voters who did not participate in and consent to the marking of their ballots, *United States v. Smith*, 231 F.3d 800, 804–05 (11th Cir. 2000).

Schemes like the one charged here under the multiple-voting statute typically involve defendants who physically marked ballots outside the presence of the voters in whose names they were cast – in other words, without the voters' participation or knowledge. As alleged in the indictment, Demuro – at Myers' direction – simply voted multiple times without bothering to conjure up even the names of the phantom voters. In this scheme, they simply electronically added to the numerical tallies of Myers' preferred candidates. Myers' attack on Count Seven fails.

## Count Eight
## 18 U.S.C. §§ 1512(b)(3) and 2

Finally, defendant asserts that Count Eight should be dismissed because the indictment fails to allege that an official proceeding was underway. ECF No. 18 at 7. However, there is no requirement that an official proceeding be underway in a prosecution for a violation of 18 U.S.C. § 1512(b)(3), and therefore Myers' argument fails.

Title 18 U.S.C. § 1512(b)(3) makes it a crime to "engag[e] in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . ." The crime has three elements.

| | | |
|---|---|---|
| First: | | the defendant knowingly engaged in misleading conduct toward another person; |
| Second: | | the defendant acted with the intent to hinder, delay, or prevent the communication of information to a Federal law enforcement officer of the United States; and |
| Third: | | that such information related to the commission or possible commission of a Federal offense. |

18 U.S.C. § 1512(b)(3); *see also United States v. Tyler*, 956 F.3d 116, 126 (3d Cir. 2020); *United States v. Farrell*, 126 F.3d 484, 487 (3d Cir. 1997); *United States v. Ronda*, 455 F.3d 1273, 1284 (11th Cir. 2006) (*citing United States v. Veal*, 153 F.3d 1233, 1253 (11th Cir. 1998), *cert. denied*, 526 U.S. 1147 (1999)).

Again, an "indictment is sufficient when it (1) contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and (2) allows him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. John–Baptiste*, 747 F.3d 186, 195 (3d Cir.2014) (citations

omitted). "No greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy." *Huet*, 665 F.3d at 595 (internal citations omitted).

"The specificity required for an indictment to have sufficient factual orientation ... is not particularly onerous." *John–Baptiste*, 747 F.3d at 196 (internal quotations omitted). "The court must take each count (including paragraphs incorporated from other counts) "as a whole," read it 'reasonably,' and give it 'fair construction,' but may not ignore the 'precise manner' in which it is drawn." *United States v. Fumo*, 628 F.Supp.2d 573, 579 (E.D. Pa. 2007) (quoting *United States v. Schramm*, 75 F.3d 156, 162 (3d Cir.1996)). Factual questions are left to the jury, and therefore "a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000).

Here, the allegations in the indictment are replete with facts that sufficiently allege "misleading conduct" on the part of defendant Myers showing that he acted "with the intent to hinder, delay, or prevent the communication of information to a Federal law enforcement officer of the United States." In particular, the indictment alleges that Myers:  a.) "[instructed] Domenick J. Demuro not to discuss the 'ballot stuffing' over the telephone; b.) [advised] Domenick J. Demuro to conceal the receipt of bribes by providing fictitious names to be listed as the payee on checks drawn on the campaign accounts of defendant MYERS' preferred candidates and unwitting clients by telling Demuro, 'I'm gonna get you a couple checks there's no question about that. If you want to give me a - a different name than Domenick Demuro that's your business…;' c.) [advised] Domenick J. Demuro that defendant MYERS would hand

16

Demuro bribe payments in the form of checks after the deadline for the last campaign finance report prior to the May 2017 primary election because, 'you don't wanna - you don't wanna be on any [candidate's campaign finance] report May 7th when the election is May 16th;' d.) [had] Domenick J. Demuro sign receipts for bribe payments in the form of cash and instructing Demuro that 'if there was ever a question Dom . . . you know you'd say well I gave the money out Election Day [to get out the vote];' and, e.) [provided] a check to Domenick J. Demuro drawn on the campaign account of defendant MYERS' client candidate and made payable to Demuro's spouse and later falsely characterized on the unwitting candidate's campaign finance report as supporting a 'get out the vote' effort."  ECF No. 1 Count Eight ¶¶ 2(a) through 2(e).

The very content of the communications and instructions from Myers, *a former United States Congressman tampering with multiple federal elections*, show that he clearly anticipated that the scheme might draw the attention of federal investigators.  The indictment alleges that he specifically told Demuro not to discuss the ballot stuffing scheme over the telephone, obviously concerned that federal law enforcement might be listening in to their conversations (a well-founded fear).  Additionally, the creation of misleading and deceptive phony receipts to paper over and justify the bribe payments in cash, the fictitious payee names for bribes in the form of checks, the intentional delay of reporting the bribe payments drawn on candidates' campaign accounts on campaign finance reports until after the elections, and the explicit instructions to attribute the bribe payments "to get out the vote" efforts if and when Demuro was asked about the scheme all clearly illustrate Myers' corrupt effort to frustrate the federal authorities "with the intent to hinder, delay, or prevent the communication of information to a Federal law

17

enforcement officer of the United States." Obviously, the misleading information Myers provided to Demuro "related to the commission or possible commission of a federal offenses."

In *United States v. Fowler*, 563 U.S. 668 (2011), the Supreme Court examined "intent to prevent the communication … to a law enforcement officer … of information relating to the commission or possible commission of a Federal offense" under 18 U.S.C. § 1512(a)(1)(C). Section 1512(b)(3) contains almost identical language. In *Fowler*, the Court held that a defendant need not have a particular federal law enforcement officer, nor even a "general thought about federal officers" in mind. *Fowler*, 563 U.S. at 673. The Court further held that the government was not required to prove that a communication "would have been federal." *Id*. at 678. Instead, *at trial*, the government must prove "a reasonable likelihood … that … at least one of the relevant communications would have been made to a federal law enforcement officer." *Id*. at 677–78. (Government need not show that such communication would have been federal "beyond a reasonable doubt, nor even that it is more likely than not …. But the Government must show that the likelihood of communication to a federal office was more than remote, outlandish, or simply hypothetical.") Myer's argument that Count Eight should be dismissed is without merit.

WHEREFORE, for these reasons, the government in this case respectfully submits that defendant's Motion to Dismiss Counts Three, Four, Five, Seven and Eight should be denied.

Respectfully submitted,

WILLIAM M. MCSWAIN
United States Attorney

By:

/s/   Eric L. Gibson
ERIC L. GIBSON
RICHARD P. BARRETT
Assistant United States Attorneys

Dated:   November 16, 2020

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Response in Opposition to Defendant's Motion to Dismiss Counts Three, Four, Five, Seven and Eight has been served upon all counsel of record electronically and via ECF.


s/ Eric L. Gibson
ERIC L. GIBSON
Assistant United States Attorney


Dated: November 16, 2020