IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | NO. 20-CR-210 |
| MICHAEL "OZZIE" MYERS" | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO BAR ADMISSION OF THE AUDIOTAPES**

The United States of America, by its attorneys, William M. McSwain, United States Attorney for the Eastern District of Pennsylvania, and the undersigned attorneys, hereby responds in opposition to the defendant's pretrial motion to bar admission of the audiotapes of the defendant discussing his ballot stuffing scheme and his attempts to obstruct justice. ECF No. 24. Defendant's motion is meritless and should be denied.

**I.  INTRODUCTION**

In this case, former U.S. Congressman Michael "Ozzie" Myers is charged by indictment with conspiring to violate voting rights by fraudulently stuffing the ballot boxes – also known as ringing up votes - for specific political candidates in the 2014, 2015, and the 2016 primary elections, bribery of an election official, falsification of records, voting more than once in federal elections, and obstruction of justice. ECF No. 1 (Indict.).

Defendant complains that a cooperating witness recorded a number of conversations with him. ECF No. 24 at 2. Among the conversations, defendant was recorded: a) instructing the cooperating witness not to discuss the "ballot stuffing" over the telephone; b) advising the cooperating witness to conceal the receipt of bribes by providing fictitious names to be listed as the payee on checks drawn on the campaign accounts of defendant's preferred candidates and

1

unwitting clients by telling the cooperator, "I'm gonna get you a couple checks there's no question about that. If you want to give me a - a different name than [the cooperator's] that's your business…."; c) advising the cooperating witness that he (the defendant) would hand the cooperator bribe payments in the form of checks after the deadline for the last campaign finance report prior to the May 2017 primary election because, "you don't wanna - you don't wanna be on any [candidate's campaign finance] report May 7th when the election is May 16th;" and d) discussing "receipts" for bribe payments in the form of cash and instructing the cooperator "if there was ever a question . . . you know you'd say well I gave the money out Election Day [to get out the vote]." *See* ECF No. 1 Count Eight ¶¶ 2(a) through 2(d).

## II. ARGUMENT

### A. The Recordings Are Not Subject to Suppression

Wire or oral communications may be lawfully intercepted pursuant to 18 USC § 2511(2)(c), when one of the parties to the communication has given prior consent. This obviates any need for a warrant or court approval prior to the interception of this type of communication. *United States v. Armocida*, 515 F.2d 49, 52 (3d Cir.), *cert. denied*, 423 U.S. 858 (1975); *United States v. Santillo*, 507 F.2d 629 (3d Cir.), *cert. denied*, 421 U.S. 968 (1975). Since the recordings here were recorded by a participant and with the participant's consent, Myers' motion to suppress the recordings fails.

### B. The Recordings Are Authentic and Admissible

As acknowledged in Myers' pleading, copies of the consensually intercepted conversations have already been provided to counsel for the defendant in discovery. ECF No. 24 at 3-4.

As anticipated by defendant, the government will seek to admit in evidence and to play for the jury at trial, conversations between the cooperating witness and the defendant in this case. The government will also seek to use the transcripts of the conversations as an aid to the jury. Defense counsel has been provided with the transcripts to be used by the government at trial. The government has advised defense counsel to inform the government of any disagreements with the government's transcriptions of the recorded conversations and the government's identification of the speakers to the conversations.

In his motion to preclude the use of the recordings, Myers relies upon *United States v. Starks*, 515 F.2d 112 (3d Cir. 1975), which held "that the burden is on the government 'to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings,'" *Id*. at 121 (*quoting United States v. Knohl*, 379 F.2d 427, 440 (2d Cir. 1967), *cert. denied*, 389 U.S. 973 (1967)), and that the following factors are the generally relevant considerations:

1. The recording devices used were capable of accurately recording the conversations;

2. The operators of the recording devices were competent;

3. The recordings are authentic and correct;

4. There have been no changes in, additions to, or deletions from the recordings;

5. The recordings have been properly preserved;

6. The speakers on the recordings are properly identified;

7. The consenting parties to the recordings freely and voluntarily consented to the recording of the conversations; and

8. The transcripts of the recordings accurately represent the conversations on the

recordings, and accurately identify the speakers and parties to the recorded conversations.

*Starks*, 515 F.2d at 121 n.11.

However, the ruling in *Starks*, both as to burden and content of proof, was substantially undermined by the later adoption of the Federal Rules of Evidence. In particular, Rule 901 sets forth the appropriate test for a showing of authenticity of evidence, in order to allow the jury to consider that evidence. Rule 901(a) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Thus, to the extent that *Starks* required "clear and convincing evidence," it is no longer good law with respect to the preliminary finding to be made by the trial court.[1] Moreover, to the extent that *Starks* suggests a particular formulation must be followed to establish authenticity of recordings, it is not valid.

In some cases, the factors listed in *Starks* may remain relevant to the preliminary determination. This is particularly so in a case in which the participants to the conversation are not available, and the government must establish the identity of the persons on the recording and the absence of any malfunction or alteration. *See* Rule 901(b)(9) (evidence may be authenticated by proof "describing a process or system used to produce a result and showing that the process or system produces an accurate result"). However, in this case, the government will authenticate the recordings and transcripts and verify their accuracy in the following manner:

---

1 The burden presently imposed by Rule 901 is the same as that applicable to factual determinations made by a judge prior to permitting the admission of evidence, under Rule 104. Thus, the *Starks* rule actually imposed a higher burden for admission of recordings than currently applies for admission of any other type of evidence. Indeed, in a civil forfeiture proceeding, the *Starks* requirement would impose a higher burden for admissibility of recordings than the government faces in proving its entire claim.

4

the cooperating witness and/or the FBI agents will testify that the recordings and transcripts are accurate. The cooperating witness and/or the FBI agents are familiar with the voices of the participants in the recorded conversations and will be able to identify those participants. That testimony alone is sufficient to meet the "slight" test for authentication. *See* Rule 901(b)(1) (authentication may rest on "[t]estimony that a matter is what it is claimed to be"); *United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir. 2001) (testimony of a participant is alone sufficient to authenticate a tape recording); *United States v. Jones*, 730 F.2d 593, 597 (10th Cir. 1984) (same); *United States v. Albert*, 595 F.2d 283, 290 (5th Cir.) (same), *cert. denied*, 444 U.S. 963 (1979).

In any event, all of the factors outlined in *Starks* are met in this case and the government's recordings of relevant conversations are admissible at trial. The Third Circuit has held that "[t]he burden of proof for authentication is slight." *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir. 1985). The rule does not "require anything more than a prima facie showing that the evidence is what its proponent claims it to be." *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 285 (3d Cir. 1983), *rev'd on other grounds*, 475 U.S. 574 (1986). "All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what its proponent claims it to be." *Id*. After this preliminary determination, the final assessment of authenticity is left to the jury. *Id*. The decision to admit recordings into evidence is reversible only if the district court abused its discretion. *See United States v. Jackson*, 649 F.2d 967, 977 (3d Cir.), *cert. denied sub. nom.*, *Bailey v. United States*, 454 U.S. 871 (1981). "The fact that certain portions of the tape are inaudible does not render the entire tape inadmissible." *United States v. Gordon*, 688 F.2d 42, 44 (8th Cir. 1982). *Accord, United States v. Nicholson*, 815 F.2d 61, 62 (8th Cir. 1987).

5

Where a recording is challenged on grounds of audibility, the question for the court to determine is whether the inaudible parts are so substantial as to render the recordings as a whole untrustworthy. This determination is within the sound discretion of the trial judge.[2] *See United States v. Carbone*, 798 F.2d 21, 24 (1st Cir. 1986); *United States v. Robinson*, 763 F.2d 778, 781-82 (6th Cir. 1985).

Although, for the reasons set forth above, the government does not believe that it is necessary, the government avers that and asks the Court to make findings that:

1. The recording devices used were capable of accurately recording the conversations;

2. The operators of the recording devices were competent;

3. The recordings are authentic and correct;

4. There have been no changes in, additions to, or deletions from the recordings;

5. The recordings have been properly preserved;

6. The speakers on the recordings are properly identified;

7. The consenting parties to the recordings freely and voluntarily consented to the recording of the conversations; and

8. The transcripts of the recordings accurately represent the conversations on the recordings, and accurately identify the speakers and parties to the recorded

---

2 At the time the recordings are played aloud, the government will move to publish the transcripts of the conversation to the jury via the computer monitors in the courtroom. The decision whether to allow the jury to receive these transcripts is within the trial judge's discretion. *See United States v. Pecora*, 798 F.2d 614, 631 (3d Cir.1986) (jury's use of transcripts did not deny defendant right to fair trial where no indication that transcripts were inaccurate); *United States v. Adams*, 759 F.2d 1099, 1115 (3d Cir.1985) (not abuse of discretion to admit transcripts where trial judge instructed jury that the recording controlled over transcript in case of error or ambiguity); *United States v. Cruz*, 765 F.2d 1020, 1022-23 (11th Cir.1985) ("transcripts may be used as substantive evidence to aid the jury in determining the real issue presented, the content and meaning of the tape recordings").

conversations.

### C. Lay Opinion is Admissible to Provide a Clear Understanding of the Recordings

Rule 701 provides that a lay witness may provide the jury with opinion or inferences that are (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 of the Federal Rules of Evidence. Numerous federal courts have interpreted Rule 701 to permit testimony, including testimony by law-enforcement agents, regarding impressions and interpretations of recordings, regardless of whether the testifying witnesses participated in or personally observed what was being recorded. *See, e.g.*, *United States v. Flores*, 63 F.3d 1342, 1359-60 (5th Cir. 1995) (upholding admissibility of opinion testimony from co-conspirators about tape-recorded conversations in which they did not participate); *United States v. Saulter*, 60 F.3d 270, 276 (7th Cir. 1995) (upholding admissibility of opinion testimony by a non-party to recorded conversations); *United States v. Garcia*, 994 F.2d 1499, 1506-07 (10th Cir. 1993) (upholding admissibility of opinion testimony about the meaning of recorded phone conversations from an FBI agent not present during the conversations); *United States v. Savage*, 2013 WL 395482 (E.D.Pa. Feb. 1, 2013) (granting motion *in limine* to permit the Government to elicit the lay opinion and perceptions of FBI Special Agent with regard to his understanding of coded conversations between defendants captured on recordings and to provide context and clarification where the subject matter of those conversations is ambiguous); *United States v. Eiland*, 2006 WL 2844921 (D.D.C. Oct. 2, 2006) ("the lay witness need not actually have participated in the conversations in question in order to satisfy Rule 701(a).").

7

Indeed, the Third Circuit is no different in this regard. Lay witnesses may state their understanding of tape-recorded conversations if "rationally based on the perception of a witness and helpful to an understanding of the testimony of the witness on the stand or to the determination of a fact in issue." *United States v. De Peri*, 778 F.2d 963, 977 (3d Cir. 1985) (citations omitted). This is particularly so when the recorded conversations at issue are "sharp and abbreviated, composed with unfinished sentences and punctuated with ambiguous references to events that are clear only to [the speaker] and his audience." *Id.*[3] *See also See United States v. Hoffecker*, 530 F.3d 137, 171 (3d Cir. 2008) (affirming district court's admission of agent's interpretation of non-coded conversations under Rule 701 because "the 'deliberately guarded responses' in the conversations which were 'not clear to the uninitiated observer' were akin to 'coded words,' [and thus the agent's] explanation of the language used in the conversations was helpful to the jury"); *United States v. Dicker*, 853 F.2d 1103, 1108 (3d Cir. 1988) ("courts have construed the helpfulness requirement of Fed. R. Evid. 701 and 702 to allow the interpretation by a witness of coded or 'code-like' conversations" so long as those interpretations do not extend to "clear conversation.").

The only requirement imposed by courts when permitting such testimony is that witnesses should rely on experience and information obtained through the cases at issue. Thus, in *United States v. Rollins*, 544 F.3d 820 (7th Cir. 2008), the Seventh Circuit affirmed the district

---

3 Indeed, in rejecting the defendant's argument that lay opinion testimony interpreting tape-recorded conversations was inadmissible in *De Peri*, the Third Circuit noted that, "[t]o the uninitiated listener, [the defendant] speaks as if he were using code." 778 F.2d at 977. Because "the trial court vigorously policed the governments examination of [the lay witness] to ensure that he was not asked to interpret relatively clear statements," the Third Circuit found no error in the admission of lay opinions regarding the witness's understanding of the recorded conversations.

court's admission of a law-enforcement agent's lay testimony providing his impressions and interpretation of recorded conversations to which he was not a participant. The testifying agent in *Rollins* had familiarized himself with the case by listening to numerous recorded conversations, becoming "very familiar" with the recorded voices that he had monitored, interviewing witnesses who were familiar with the illicit conduct that was recorded, and observing activity that helped confirm the meaning of terms used in monitored recordings. *Rollins*, 544 F.3d at 832. The Seventh Circuit therefore concluded that "[t]hese bases for [the agent's] testimony defeat [the defendant's] claim that the government laid an insufficient foundation for this testimony." *Id*. Likewise, the Eleventh Circuit has affirmed the same sort of testimony where it was rationally based on an agent's overall familiarity with an investigation as shaped by several factors. *United States v. Jayyousi*, 657 F.3d 1085 (11th Cir. Sept. 19, 2011).

Of particular significance to the present case, courts have proven particularly likely to permit non-participating agents to interpret recordings that incorporate guarded language or code words. *United States v. Miranda*, 248 F.3d 434 (5th Cir. 2001) (affirming admission of an agent's interpretation of coded words in recorded conversations); *United States v. Novaton*, 271 F.3d 968 (11th Cir. 2001) (affirming the district court's admission of law enforcement agents' testimony concerning their understanding of the meaning of certain words used by the defendants in wiretapped conversations); *United States v. Garcia*, 994 F.2d 1499, 1507 (10th Cir. 1993) (holding that FBI translator's opinion that the phrase "your old man" referred to the defendant "was helpful to [the question of] whether Defendant participated in the conspiracy" and therefore admissible under Rule 701); *United States v. Simas*, 937 F.2d 459, 465 (9th Cir.

9

1991) (permitting agents to testify concerning their "understanding of the words and innuendo" used by a defendant in order to help the jury interpret vague statements employed in bribery scheme); *cf. United States v. Reyes*, 384 Fed. Appx. 37, 41 (2d Cir. 2010).

Moreover, courts have permitted testimony regarding recorded interactions by non-participating law-enforcement officers where it contextualizes unfamiliar situations and facts for jurors. For example, in *Jayyousi*, which involved international terrorism, the Eleventh Circuit upheld such testimony under Rule 701 where it "helped the jury understand better the defendants' conversations that related to their support of international terrorism because they 'would likely be unfamiliar with the complexities of terrorist activities." *Jayyousi*, 657 F.3d at 1103 (citation omitted).

Without help interpreting and understanding the significance of certain language, jurors will face great difficulty understanding the full import of the recordings in light of the charged offenses. The cooperating witness and/or law-enforcement agents with direct knowledge of the people, places, organizations, and misconduct relevant to this case is ideally suited to explain the full meaning of the recordings. Indeed, Rule 701 squarely endorses such testimony.

WHEREFORE, for these reasons, the government in this case respectfully submits that defendant's Motion to Bar Admission of the Audiotapes should be denied.

Respectfully submitted,

WILLIAM M. MCSWAIN
United States Attorney

By:

/s/ Eric L. Gibson
ERIC L. GIBSON
RICHARD P. BARRETT
Assistant United States Attorneys

Dated: November 17, 2020

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Response in Opposition to Defendant's Motion to Bar Admission of the Audiotapes has been served upon all counsel of record electronically and via ECF.

s/Eric L. Gibson<br>
ERIC L. GIBSON<br>
Assistant United States Attorney

Dated: November 17, 2020

**IN THE UNITED STATES DISTRICT COURT  
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| vs. | : | **NO. 20-CR-210** |
| **MICHAEL "OZZIE" MYERS"** | : | |

## O R D E R

AND NOW, this _____ day of _____, 20\_\_, upon consideration of the government's motion to admit the recording of conversations between the defendant and other individuals, the Court finds the following as to the recordings and accompanying transcripts:

1. The recording devices used were capable of accurately recording the conversations;

2. The operators of the recordings devices were competent;

3. The recordings are authentic and correct;

4. There have been no changes in, additions to, or deletions from the recordings;

5. The recordings have been properly preserved;

6. The speakers on the recordings are properly identified;

7. The consenting parties to the recordings freely and voluntarily consented to the recording of the conversations; and

8. The transcripts of the recordings accurately represent the conversations on the recordings, and accurately identify the speakers and parties to the recorded conversations.

The Court further finds that the Government may introduce as evidence the transcripts of

the conversation identified by the government in its motion to admit the recordings, play the audio conversations to the jury and present the jury with the transcripts to read while the recordings are playing.

BY THE COURT:

_____
PAUL S. DIAMOND
United States District Court Judge