## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Crim. No. 20-210** |
| | : | |
| MICHAEL "OZZIE" MYERS | : | |

## O R D E R

Defendant Michael "Ozzie" Myers has filed two Motions to dismiss Counts of the Indictment charging him with conspiring to stuff ballot boxes for his clients running for elective offices, bribing an elected official, falsifying records, voting multiple times in a federal election, and obstructing justice.  (Doc. Nos. 1, 18, 31.)  Although Myers does not so state, he apparently proceeds under Rule 12(b)(3)(B). Fed. R. Crim. P. 12(b)(3).  I will deny both Motions.

## I.      Factual Allegations and Procedural Background

As alleged, in 2014, 2015, and 2016, Myers , a political consultant, bribed Domenick Demuro—then a Philadelphia Judge of Elections—to add votes in favor of Myers' "clients." (Doc. Nos. 1, 28.)  Leading up to the Primary Elections in 2014, 2015, and 2016, Myers contacted Demuro by phone to relay instructions.  (Id.)  Demuro in turn "rang up" extra votes for Myers' chosen candidates. (Id.)  As alleged, at the end of each Primary Day, Demuro fraudulently certified Results Receipts from the voting machines, including the additional votes in the totals.  (Id.)  In 2014, Demuro (acting on Myers' instructions) added 27 fraudulent ballots to those from the 91 voters who actually had cast ballots in Demuro's ward.  (Id.)  In 2015 he added 40 fraudulent ballots to the 219 from actual voters.  (Id.)  Finally, in 2016 he added 46 fraudulent ballots to 220 legitimate ballots.  (Id.)  In each instance, after attesting to their accuracy, Demuro placed the

fraudulent Results Receipts in a Cartridge-Results bag along with memory cartridges from each voting machine.  (Id.)  Each bag was then delivered to City Commissioners.  (Id.)

At the conclusion of each Primary Day, Myers would call Demuro to verify that he had added the fraudulent ballots.  (Id.)  During the conspiracy Myers instructed Demuro to avoid speaking about ballot stuffing on the telephone, to generate fictitious payee names for the monies Demuro himself had accepted, to create false receipts, and, if questioned, to characterize the payments as part of "get out the vote" effort.  (Id.)

The grand jury has charged Myers with two counts of violating the Travel Act; two counts of falsification of records; and one count each of conspiracy to deprive persons of civil rights; voting more than once in a federal election; conspiring to illegally vote in a federal election; obstruction of justice; and aiding and abetting.  18 U.S.C. §§ 2, 241, 1512(b)(3), 1519, 1952; 52 U.S.C. § 10307 (c), (e).

## II.   Legal Standards

I may "review the sufficiency of the government's pleadings to ... ensur[e] that legally deficient charges do not go to a jury." United States v. Huet, 665 F.3d 588, 595 (3d Cir. 2012) (quoting United States v. Bergrin, 650 F.3d 257, 268 (3d Cir. 2007)).  "[A]n indictment is facially sufficient if it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'" Id. (quoting United States v. Vitillo, 490 F.3d 314, 320 (3d Cir. 2007)).  An indictment does not require "greater specificity than the statutory language…so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." Id. (citing United

2

States v. Kemp, 500 F.3d 257, 280 (3d. Cir. 2007 (internal citations omitted)).  "[A]n indictment should be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense." United States v. Advantage Med. Transp., Inc., 751 F. App'x 258, 262 (3d Cir. 2018) (citing United States v. Willis, 844 F.3d 155, 162 (3d Cir. 2016)).

In deciding a Rule 12 motion to dismiss, "[I] must accept as true the factual allegations set forth in the indictment." Id. "Evidentiary questions—such as credibility determinations and the weighing of proof—should not be determined at this stage." Bergrin, 650 F.3d at 265.

### III.   Discussion

Myers asks me to dismiss Indictment Counts 3, 4, 5, 7, and 8.  (Doc. Nos. 18, 31.)  Because he has misinterpreted the law and because the allegations underlying each Count are sufficient, I will deny his Motions.

#### A.  Counts Three and Five: Falsification of Records

Myers mistakenly argues the elements of § 1519 include an (1) attempt to "conceal or destroy any record, document, or tangible object," and (2) knowledge that "an actual investigation or that an investigation was being contemplated."  (Doc. Nos. 18, 31.)  He also incorrectly argues that the grand jury's allegations did not satisfy the statute's intent requirement.  (Doc. Nos. 18, 31.)  Although he does not direct all arguments to both Counts, because the Counts Three and Five are legally identical, I will address them together.  (Doc. No. 1.)

To make a violations of §1519, the Government must prove that Myers: (1) "knowingly alter[ed], destroy[ed], mutilate[ed], conceal[ed], cover[ed] up, falsifie[d], or [made] a false entry in any record, document, or tangible object;" (2) "with the intent to impede, obstruct, or influence the investigation or proper administration of any matter;" and (3) that the matter was "within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1519.

Myers first argues that adding votes (as alleged) did not conceal or destroy a record. Myers ignores that the statute prohibits "falsify[ng] or mak[ing] "a false entry into any record…"—acts alleged in the Indictment.  18 U.S.C. § 1519; (Doc. No. 18).

Myers next argues that both Counts should be dismissed because the grand jury did not allege that he "knew of an actual investigation or that an investigation was being contemplated." (Doc. No. 18.)  Similarly, he argues that the Indictment does not "apprise Defendant of the issues he must be prepared to face at trial" because the grand jury did not "allege the existence of a Federal investigation."  (Doc. No. 31.)  As the Third Circuit has held, however, "knowingly" in § 1519 "modif[ies] the surrounding verbs only."  United States v. Moyer, 674 F.3d 192, 210 (3d Cir. 2012).  The allegation that Myers knowingly falsified ballots is thus sufficient.  There is not a requirement that he knew of the existence of an investigation or that he knew the matter was "within" federal jurisdiction.  The Third Circuit has further explained that acting with "the intent to obstruct, impede or influence the investigation or proper administration of any matter" violates § 1519. Moyer, 674 F.3d at 210 (citing S. Rep. No. 107–146, at 14 (2002)).  The Third Circuit further noted that Congress intended the statute to apply broadly and explicitly sought to avoid the need to "tie the obstructive conduct to a pending motion or imminent proceeding or matter."  Id., (quoting S. Rep. No. 107–146, at 14–15 (2002)).  "[Section] 1519 does not require the existence or likelihood of a federal investigation."  Id. (quoting United States v. Gray, 642 F.3d 371, 379 (2d Cir. 2011).  It is sufficient for a defendant to have acted "in contemplation" of any investigation regardless of whether an actual investigation exists or is planned at the time of the of the offense. Id.  Moreover, it is irrelevant whether a defendant knew of the federal nature of an actual or contemplated investigation.  Id.  The jurisdiction element is satisfied as long as "the matter is

ultimately proven to be within the federal government's jurisdiction." Id.  That is certainly the case here.

Myers next contends that "the paragraphs incorporated into Three and Five merely show an intent to pump up votes for Myers' candidates, not conceal evidence from any investigation." (Doc. No. 31.)  He thus argues that the grand jury's factual allegations are insufficient to "apprise Defendant of the issues he must be prepared to face at trial."  (Id.)  The Government points to detailed allegations in Count 8 respecting Myers' intent to conceal his actions.  (Doc. Nos. 1, 28, 34.)  I may not consider those allegations, however, because I must review the sufficiency of each Count as if it is a separate indictment, "without reference to any other count" unless the allegations are explicitly incorporated.  Department of Justice Criminal Resource Manual § 218 (citing United States v. Smith, 44 F.3d 1259, 1263 (4th Cir.), cert. denied, 115 S.Ct 1970 (1995)).  Myers' contention nonetheless fails.

Rule 7(c)(1) does not require detailed allegations. Fed. R. Crim. Pro. 7(c)(1); Bergrin, 650 F.3d, at 264.  An indictment is adequate when it "informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." Huet, 665 F.3d, at 595.  Tracking the language of a statute is sufficient if a common sense understanding would apprise the defendant of the "factual nature of the charges against him." U.S. v. Grass, 274 F.Supp.2d 648, 659 (M.D. Pa. 2003) (citing United States v. Shirk, 981 F.2d 1382, 1389 (3d Cir. 1992)).

Counts Three and Five each list § 1519's elements and identify that the violations occurred around the time of each Primary Day.  (Doc. No. 1.)  Additionally, the Counts incorporate paragraph 15, where the grand jury alleged that Myers "protected the scheme from detection and prosecution by law enforcement officials as well as from exposure by political candidates and the

news media, through means that included the falsification of documents and obstruction of justice." (Doc. No. 1.) This is sufficient to "permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." Bergrin, 650 F.3d, at 264.

B. Count Four: Violation of the Travel Act

Myers contends that this Count is defective because the grand jury did not allege that he made interstate telephone calls. (Doc. No. 18.) Once again, although Myers only moved to dismiss only Count Four, Count Two is legally identical. (Doc. No. 28.)

An individual violates the Travel Act when he "travels in interstate ... commerce or uses the mail or any facility in interstate … commerce, with intent to (1) distribute the proceeds of any unlawful activity; or ... (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity...." United States v. Bencivengo, 749 F.3d 205, 213–14 (3d Cir. 2014) (quoting 18 U.S.C. § 1952(a)(1), (3)). Bribery is an included "unlawful activity." Id. Additionally, "[t]elephones are instrumentalities of interstate commerce." United States v. Nader, 542 F.3d 713, 717 (9th Cir. 2008); see, also United States v. Evans, 476 F.3d 1176, 1180 (11th Cir. 2007).

Although the Third Circuit has not addressed whether intrastate use of a facility in interstate commerce can violate the Travel Act, the great majority of circuits that have addressed the issue have ruled that it can. United States v. Halloran, 821 F.3d 321, 342 (2d Cir. 2016) ("Purely intrastate use of an interstate facility is sufficient to violate the Travel Act."); United States v. Nader, 542 F.3d 713, 715 (9th Cir. 2008) ("[I]ntrastate telephone calls made with intent to further unlawful activity can violate the Travel Act because they involve use of a facility in interstate commerce."); United States v. Marek, 238 F.3d 320 (5th Cir. 2001) ("[T]he facility, not its use, is what must be 'in interstate commerce.'"); United States v. Baker, 82 F.3d 273, 275 (8th Cir, 1996)

(intrastate use of an ATM is sufficient).  See also United States v. Weathers, 169 F.3d 336, 341 (6th Cir. 1999) ("It is well established that telephones, even when used intrastate, constitute instrumentalities of interstate commerce.  Similarly, cellular telephones, even in the absence of evidence that they were used to make interstate calls, have been held to be instrumentalities of interstate commerce." (citations and emphasis omitted)), cert. denied, 528 U.S. 838 (1999).

Myers acknowledges this wealth of authority but urges me to adopt the Sixth Circuit's interstate use requirement.  (Doc. No. 18.); See United States v. Barry, 888 F.2d 1092, 1095 (6th Cir. 1989) (Travel Act applies only to interstate activities).  I decline to do so.  The plain language of the statute is unambiguous and supports the majority position.  The phrase "in interstate or foreign commerce" is next to the word "facility," which indicates that it modifies "facility," not "uses."  Nader, 542 F.3d at 717.  Accordingly, the grand jury sufficiently alleged that Myers used a telephone, a facility in interstate commerce, in furtherance of his crimes.

### C.  Count Seven: Voting More than Once in a Federal Election

Myers urges me to dismiss Count Seven because the grand jury did not allege that he directly or through conspiracy a "false information as to name, address or period of residency to establish eligibility to vote."  (Doc. No. 18.)  Myers thus ignores that the statute also prohibits "conspir[ing] with another individual for the purpose of…illegal voting."  52 U.S.C. § 10307(c).  Illegal voting includes voting multiple times.  52 U.S.C. § 10307(e).  The grand jury alleges that Myers conspired with Demuro for the latter to vote more than once.  This is sufficient.

### D.  Count Eight: Obstruction of Justice

Finally, Myers asks me to dismiss Count Eight because the grand jury did not allege that he knew of or contemplated an official proceeding.  (Doc. No. 18.)

7

The Victim and Witness Protection Act (VWPA) criminalizes "corruptly persuad[ing] another person, or attempt[ing] to do so, or engag[ing] in misleading conduct toward another person, with intent to…(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense…" 18 U.S.C. 1512(b).  The Third Circuit has recognized that there are distinct lines of jurisprudence "under the VWPA: one for the investigation-related provisions, such as § 1512(b)(3) and (a)(1)(C), and one for the 'official proceeding' provisions, such as § 1512(b)(1) and (b)(2)." United States v. Shavers, 693 F.3d 363, 379 (3d Cir. 2012), vacated on other grounds, 570 U.S. 913 (2013).  See also, United States v. Ronda, 455 F.3d 1273, 1288 (11th Cir. 2006) (noting that the "official proceeding" requirement of § 1512(b)(2) is stricter than the standard for 1512(b)(3)).  Section 1512(b)(3) requires only "the *possible* existence of a federal crime and a defendant's intention to thwart an inquiry into that crime." United States v. Veal, 153 F.3d 1233, 1250 (11th Cir. 1998).

The Supreme Court held that under § 1512(a)(1)(C), the defendant needs only to have acted to prevent a "reasonable likelihood" of a communication with a law enforcement officer, defined as "more than remote, outlandish, or simply hypothetical." Fowler v. United States, 563 U.S. 668, 677–78 (2011).  The Court likened it to a homeowner choosing to close her shutters to avoid damage from a hurricane that might not occur.  Id.  The same standard applies to § 1512(b)(3). United States v. Johnson, 874 F.3d 1078, 1080 (9th Cir. 2017).

As alleged, Myers sought to avoid law enforcement: he cautioned Demuro to avoid discussing "'ballot stuffing' over the telephone," and instructed him to generate fictitious payee names for bribes, to create false receipts, and, if questioned (presumably by law enforcement officers), to explain falsely that the payments as part of "get out the vote" effort.  (Doc. No. 1.)

These and other factual allegations make out a violation of § 1512(b)(3); they are sufficient to enable Myers to prepare a defense, including a claim of double jeopardy.  United States v. Huet, 665 F.3d 588, 595 (3d Cir. 2012).  Accordingly, I will not dismiss Count Eight.

**IV.    Conclusion**

Because the Indictment is legally sufficient, I will deny Myers' Motions.

\*\*\*

**AND NOW**, this 15th day of March, 2021, in consideration of Defendant's Motion for Dismissal of Counts Three, Four, Five, Seven, and Eight of the Indictment (Doc. No. 18), the Government's Response (Doc. No. 28), Defendant's Motion to Dismiss Counts Three and Five of the Indictment (Doc. No. 31), and the Government's Response (Doc. No. 34), it is hereby **ORDERED** that Defendant's Motions (Doc. Nos. 18, 31) are **DENIED**.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

_____

Paul S. Diamond, J.