IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | NO. 20-CR-210 |
| MICHAEL "OZZIE" MYERS | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S SECOND MOTION IN LIMINE**

The United States of America, by its attorneys, Jennifer Arbittier Williams, Acting United States Attorney for the Eastern District of Pennsylvania, and the undersigned attorneys, hereby responds to defendant's second motion *in limine* in which he seeks to bar admissible evidence on hearsay grounds. ECF No. 33.

### I.  INTRODUCTION

In this case, former U.S. Congressman Michael "Ozzie" Myers is charged by indictment with conspiring to violate voting rights by fraudulently stuffing the ballot boxes – also known as ringing up votes - for specific political candidates in the 2014, 2015, and 2016 primary elections, bribery of an election official, falsification of records, voting more than once in federal elections, and obstruction of justice. ECF No. 1 (Indict.); *see also* ECF No. 28 at 1-5. Specifically, Myers is alleged to have bribed Domenick Demuro, the Judge of Elections for the 39th Ward, 36th Division in Philadelphia, in a fraudulent ballot stuffing scheme over several years. *Id*. at ¶ 11. The indictment also charges Myers with falsifying records and obstruction of justice alleging, among other things, that Myers instructed Demuro not to discuss the "ballot stuffing" over the telephone; advised Demuro to conceal the receipt of bribes by providing fictitious

1

names to be listed as the payee on checks drawn on the campaign accounts of defendant Myers' preferred candidates and unwitting clients; advised Demuro that he would hand Demuro bribe payments in the form of checks after the deadline for the last campaign finance report prior to the May 2017 primary to avoid scrutiny; had Demuro sign receipts for bribe payments in the form of cash to create a false paper trail appearing to justify the payments; and, provided a check to Demuro, drawn on the campaign account of Myers' client candidate and made payable to Demuro's spouse, and later falsely characterized it on the unwitting candidate's campaign finance report as supporting a "get out the vote" effort. ECF No. 1 Count Eight ¶¶ 2(a) through 2(e).

## II.  ARGUMENT

The defendant's motion seeks to bar admission of several portions of recorded conversations on grounds that the recordings contain inadmissible hearsay. ECF No. 33 at 2. Myers argues that the recorded out-of-court statements are hearsay offered for the truth of the matter asserted. *Id*.

It is noteworthy that on two prior occasions, Myers argued that the indictment should fail as to Counts Three and Five alleging falsification of records, in violation of 18 U.S.C. § 1519, because in his view, there is no evidence to suggest, and the indictment fails to allege, that Myers intended to impede an investigation or the proper administration of a federal matter. ECF Nos. 18 at 6, 31 at 2. This is remarkable because the very first portion of a recording that Myers seeks to exclude in his latest motion *in limine* captures Myers discussing the very FBI investigative activity about which he has repeatedly feigned ignorance. *See* ECF No. 33 at 1A ("Tape of 2/9/17 between [Myers] and [cooperating witness, Domenick Demuro, where

cooperating witness] states that [a ward leader] said Feds are looking at stuff."). Indeed, Myers also complains in his motion about a portion of an April 12, 2017 conversation in which he and Demuro discuss how to evade detection by law enforcement in the then upcoming May 2017 primary election. *See* ECF No. 33 at 1E.

Myers also seeks to exclude a portion of a conversation where Demuro, the cooperating witness, discussed "cheating" and "adding" votes directly with the defendant. *See* ECF No. 33 at 1F ("Tape of 5/8/17 between [Myers] and [cooperating witness Demuro, where Demuro] states that [a ward leader] said MFers like you who cheat, add votes is why [a judicial candidate] lost . . . [Myers] got you putting votes for his people.").

"[W]here the admission of the substance of a communication between the defendant and another person is sought, the fact that the statements made by the other person were out of court does not, as a blanket matter, preclude admission." *United States v. Rivera*, 780 F.3d 1084, 1093 (11 Cir. 2015). Notwithstanding defendant's attempt to characterize these excerpts from conversations and others like them as hearsay, the statements at issue are clearly admissible either as admissions of a party opponent (Myers) pursuant to Fed. R. Evid. 801(d)(2)(A) or as adoptive admissions by Myers under Fed. R. Evid. 801(d)(2)(B); *see also United States v. Webb*, No. 05–4065, 2006 WL 2974124 *3 (3d Cir. Oct. 18, 2006) (not precedential) ("adoptive admission is tantamount to the defendant's own statement, not the statement of another"). In the recordings, Demuro's statements to the defendant provide a context in which to make Myers' statements and admissions understandable.[1] *United States v. Rivera*, 780 F.3d 1084, 1093, (11th

---

1 The government does not presently intend to introduce in its case-in-chief the conversations between the cooperating witnesses, Demuro, and a third party, a ward leader, referred to as "Ro" in defendant's motion. *See* ECF No. 33 at 1D. However, the government submits that it is premature to rule on the admissibility of

3

Cir. 2015) (the jury needed to hear declarant's statements on the recordings "to give context to Defendant's responses, which otherwise would have been no more than a disjointed and incoherent monologue"). Moreover, it does not matter whether the cooperating witness was telling Myers the truth when, for example, Demuro referred to a discussion with another partisan operative about the FBI investigation into voter fraud in South Philadelphia. What matters is whether such a conversation alerted and/or confirmed in Myers' mind that federal law enforcement was scrutinizing his activities at the polls and what he did and intended to do as a result. The statements are offered to demonstrate their effect on Myers' state of mind and are therefore not hearsay. *Rivera*, 780 F.3d at 1093. The out-of-court statements made to Myers about voter fraud and the FBI's investigation establish the circumstances under which Myers acted and provide motive for his deceitful conduct as charged in Count Eight.

### February 9, 2017 Recording

Defendant Myers specifically complains first about an exchange with the cooperating witness recorded on February 9, 2017. *See* ECF No. 33 at 1A. During this conversation, Myers himself specifically raises the issue that a ward leader, Myers' South Philadelphia rival, may suspect Myers' confidant and accomplice to ballot stuffing, Domenick Demuro, of cooperating with federal law enforcement by "wearing a wire" because of law enforcement activity in the South Philadelphia wards. The pertinent excerpt is more fully reproduced below:

> Demuro: You know It's just- it's just with her Oz, I don't want to deal- I know I gotta deal with [the ward leader], but ya know she acts like I don't know [overlapping voices] . . .]

---

conversations between Demuro and the ward leader, now deceased, at this time since any number of relevant non-hearsay purposes may arise at trial permitting their introduction. *See generally* Fed. R. Evid. 801(d)(1)(A) (prior inconsistent statement); 801(d)(1)(B) (prior consistent statement); 803(1) (present sense impression); 803(3) (then-existing mental, emotional, or physical condition); 804(b)(3) (statement against interest).

4

| | |
|---|---|
| Myers: | Like she's the Queen of Sheba for Christ's sake. |
| Demuro: | You know I – I - I made a statement to her about givin her some- ya know giving her some votes, she said oh no, no, no she said uh the Feds are lookin at everything, do everything by the book she said. That's her exact words to me. Meanwhile she - she made me go all the fuckin shit for years for her and then she's acting like blessed mother [overlapping voices] . . . |
| Myers: | You know what- you know what it is? She might think you're wired, ya know? [overlapping voices] . . . |
| Demuro: | Well she did spread that [overlapping voices], she did spread that before about me. |
| Myers: | Well she - that [unintelligible] - you know for her to take positions like that, she's not gonna say nothing, she figures you're wired. |
| Demuro: | Yeah she does. You're right - you're right - you're 100%. |
| Myers: | That's the reason she would make statements like that. |

Myers' hearsay objections are baseless. The excerpt above is admissible because it is comprised primarily of the defendant's own statements, which are admissible under Fed. R. Evid. 801(d)(2)(A) as admissions of a party opponent. Those admissions by Myers include his statement that the ward leader thought Demuro was "wired," a statement that only makes sense from someone aware of the nature of Demuro's illegal ballot stuffing activity and the federal law enforcement interest in that ballot stuffing. It is well settled that such statements of the defendant are admissible under Rule 801(d)(2)(A). *See United States v. Killough*, 848 F.2d 1523, 1528 (11th Cir. 1988) (holding that defendant's own statements are not hearsay and are admissible against him in court under Rule 801(d)(2)(A)); *accord United States v. Cruz*, 509 Fed. Appx. 890, 899 (11th Cir. 2013); *United States v. Menendez*, 315 Fed. Appx. 103, 107 (11th Cir. 2008).

Moreover, even where the recording is not comprised of Myers' own statements, his response ("She might think you're wired ya know?") to Demuro's comment that the ward leader was afraid that the "Feds are lookin at everything," was a tacit admission that illegal activity was taking place under Fed. R. Evid. 801(d)(2)(B). It is not necessary for Myers to use any specific language to adopt Demuro's statement. Demuro was crystal clear in his reference to ballot stuffing, and obviously he spoke directly to Myers. Myers clearly understood the statement and had ample opportunity to separate himself from the scheme or otherwise object, but he did not do so. And, Myers' complaint notwithstanding, the excerpt also serves a non-hearsay purpose because, regardless of its truth, the statement places Myers' own statements and admissions into an understandable context for the jury. *See, e.g.*, *United States v. Champion*, 813 F.2d 1154, 1172 (11th Cir. 1987) (holding that out-of-court statements in which defendant manifested his adoption or belief in the truth of the statements were admissible as non-hearsay under Rule 801(d)(2)(B)); *United States v. Byrom*, 910 F.2d 725, 737 (11th Cir. 1990) (holding that statements of witness to defendant were admissible to make understandable the statements made by defendant himself).

### February 20, 2017 Recording

Next, Myers complains about a portion of a recorded conversation from February 20, 2017. ECF No. 33 at 1B. In this exchange, Myers and Demuro discussed who controlled the 39th Ward. Myers specifically objects to a portion of this recording where Demuro told Myers that a ward leader directed Demuro to "bang 'em up . . . ring him up" in reference to a candidate supported by the ward leader. *Id*. Here, the recorded conversation illustrates that Myers is clearly aware and understands that he is dealing with a corrupt judge of elections willing to

manipulate the election results.

Moreover, in a later portion of the same conversation, to which Myers has *not* lodged any objection, Myers told Demuro that he intended to produce every vote he could for his candidates.

> Myers: I'm looking at a different situation now. And I'm looking about producing every vote that I can for my candidates, and of course you're a big part of that if you still want to be a part of it. And ya know if we get [the ward leader] to accept what a normal ward leader would accept, like $1,000 check, or maybe 15 hundred if she goes all the way. Then that'll be fine.
>
> Demuro: No, I'll be part- I'm- I'm part of it . . .

Here again, the full exchange - including the portion about which the defendant complains - places Myers' own admissions in a complete and understandable context. The entire exchange – including the portion about which Myers complains – is admissible as non-hearsay under Rule 801(d)(2)(B).

## February 22, 2017 Recording

Next, Myers complains about a portion of a recorded conversation from February 22, 2017, in which Demuro discusses an offered $1,000 bribe payment from a judicial candidate. ECF No. 33 at 1C. In this conversation, Demuro specifically asks Myers whether he knows who the candidate was and whether the judicial candidates know generally that he and Myers are taking money for "ringing up votes." Myers responds that he does not know who the candidate was, but that "it sounds like a set up." Again, the recording makes plain that Myers knows and understands that he is dealing with a corrupt judge of elections in a position to execute the election crimes in concert with Myers as detailed in the indictment. The pertinent exchange is reproduced at length below.

> Demuro: . . . I got, you know, I got to ask you a question.

| | |
|---|---|
| Myers: | Sure. |
| Demuro: | One of them fucking judges last night, a fat, heavy big, like a big thick guy. He came up to me was talking and then said about giving me a thousand dollars for election. Does he know anything about, like does he know, or does he know anything about me ringing up votes for these judges. I didn't know who he was, I got very leery, I [overlapping voices]. |
| Myers: | What did he look like? |
| Demuro: | He was a bulky type of guy with like greyish hair. Maybe [your family member] knows. I mean, I don't, I didn't know his name, I never got his name, I got a little leery about it, I figured I forgot to ask you, now I, I remembered so I asked you. You know. I don't know if these, these, these judges that give us money, do they know that I ring up votes in these, I don't know. You know, I just don't know. |
| Myers: | No, I know, I have no clue who you are even talking about. |
| Demuro: | Neither do [overlapping voices]. |
| Myers: | Try to find out his name. You know, maybe, I, I don't even. See there was a lot of people there Dom I don't even know. |
| Demuro: | Yeah there were so many, you know, I. |
| Myers: | Some, yeah, so many of those characters that came in there, I knew a couple of them, you know. |
| Demuro: | [Overlapping voices.] Isn't that unusual for a guy running for judge to offer me like a thousand, he don't even fucking know me, you know what I mean, you're offering me . . . |
| Myers: | It's, it's very unusual. It sounds like a setup. |
| Demuro: | You know. [Overlapping voices]. |
| Myers: | I would like to find out his name so I don't have to deal with him, you know. |
| Demuro: | Yeah, yeah, I would like very much to know who he is, who he was, you know because you know, you know you, know my division was under scope so, I don't, you know, I don't. |

| | |
|---|---|
| Myers: | Yeah. |
| Demuro: | I don't trust these motherfuckers, I don't trust, you know what I mean. |
| Myers: | Yup. No, I don't [overlapping voices]. |

## April 12, 2017 Recording

Myers similarly complains about a recorded conversation from April 12, 2017, where Demuro advised Myers that Myers' rival, the ward leader – *like Myers* - also wanted Demuro to ensure candidates she supported received fraudulent votes by "hand[ing Demuro] a hundred bucks and said ya know, do your thing . . ." The portion Myers complains about in his motion ("do the thing you do") is part of a series of lengthier discussions the same day in which Demuro and Myers talk about federal law enforcement interest in Demuro's division of the 39th Ward, and how to evade detection of their election crimes going forward. ECF No. 33 at 1E. Myers also tells Demuro that he believes he knows the identity of an FBI informant with information about the ballot stuffing. The fuller context and meaning of the conversation are made clear from an earlier exchange reproduced below:

| | |
|---|---|
| Demuro: | What I was saying to you was - tell me if I'm wrong. I'd rather take less money and do what I'm gonna do, I'm gonna vote for people that don't come in. I'm not gonna be pullin no more fuckin, ya know levers. I'm gonna vote for people that don't come in. |
| Myers: | Yeah but you don't want to say that over the phone [overlapping voices], it don't sound right. |
| Demuro: | Yeah, you're right. |
| Myers: | You don't - that's why I said I'll talk to you in the car. You don't - you can't vote for people that don't come in, that means you're voting people that didn't show. |
| Demuro: | But that's the - that's the deal I want to do that's ah - how I want to do it, I want to vote people that don't come in. In other word if I know you're not |

| | |
|---|---|
| | comin' can I vote for you, that's it. |
| Myers: | Is the people know it? |
| Demuro: | I don't know. I don't know [overlapping voices]. No, they're not gonna know it - no they're not gonna know it, no. |
| Myers: | No well the point is - I mean years ago there was people would say I'm - I'm gonna be working up in, ah, North Jersey just fucking voting. |
| Demuro: | Yeah that's… |
| Myers: | I mean I have people tell me that, Dom. |
| Demuro: | Yeah. |
| Myers: | I'm sure you did too. |
| Demuro: | Oh pshh yes - yes. |
| Myers: | People that you know good. |
| Demuro: | But you know what I'm gonna tell you something, I never - I never really did it before, but I want to do it this way because you know them mother fuckers [FBI] were lookin' for me and ya know not - nothing came, but they were lookin' for Dom the - the- the 36 you know I mean not just the 36th, 39-36, I don't - I don't ah [overlapping voices] . . . |
| Myers: | Dom I really believe that was initiated by . . . |
| Demuro: | By who, her? |
| Myers: | No, by that fuckin screw-knot that now lives in uh - uh Washington State, Seattle, Washington. |
| Demuro: | Oh - oh you mean that - that… |
| Myers: | [Former City Commissioner]. |
| Demuro: | Yeah, I – yeah, you're probably 100% right. |
| Myers: | That's who the fuck initiated that. |
| Demuro: | That's who I thought about because ya know she sent, six or seven letters |

|           | out you know? Yeah [overlapping voices] to - to [the ward leader] about six or seven committee people that [voting] machines and [poll] books weren't balancing. |
|-----------|---|
| Myers:    | Exactly she sent the same letter to [another ward leader] with the - with [another judge of elections] uh [unintelligible] was one of them. |
| Demuro:   | Yeah, I was one. |
| Myers:    | A couple [overlapping voices] . . . |
| Demuro:   | I was one. |
| Myers:    | Between the both wards it was six or seven . . . |
| Demuro:   | Six or seven I remember that, but I figured this way [overlapping voices]. |
| Myers:    | What had happened after - after [the former City Commissioner] sent that letter that maybe uh I don't know six months, eight months later the FBI come in and wanted to [unintelligible] sheets or something from those- those divisions. And they wanted the payroll [for election officials] too. |
| Demuro:   | Why the payroll I never [overlapping voices] . . . |
| Myers:    | Because let me tell you why the payroll. [Another judge of elections] used to sign every fucking name [overlapping voices] . . . |
| Demuro:   | [Gasps] I never fucking did that. |
| Myers:    | In the same - in the same signature. |
| Demuro:   | I never did that. |
| Myers:    | [The other judge of elections] even - when they put the 3 divisions together. |
| Demuro:   | Yeah. |
| Myers:    | She even put herself in as the fucking ju - judge in one of them. |
| Demuro:   | Ahh you can't do that Oz that's not [unintelligible/overlapping voices]. |
| Myers:    | She got paid two or three fuckin check- different checks she got. |

| | |
|---|---|
| Demuro: | Ahh I never took another check. How the fuck is she [overlapping voices]. |
| Myers: | See, there was three divisions in there. |
| Demuro: | [The other judge of elections is] nuts. |
| Myers: | [The division] didn't have a fuckin' judge so she - she became their judge too. |
| Demuro: | No[,] you can't do that Oz I mean really you know as far as voting [overlapping voices] . . . |
| Myers: | [Unintelligible] I told you that almost three years ago. |
| Demuro: | Yeah, I know- I know. |
| Myers: | So, I don't think that ever materialized anything. And then when they seen that this, uh, this girl got defeated, this [former City Commissioner]. |
| Demuro: | She got knocked out. She got knocked out right away, they knocked her out of the commissioner [position]. |
| Myers: | Well when she - she didn't even do a- her petitions right. |
| Demuro: | Yeah, she didn't [overlapping voices]. |
| Myers: | I think when they seen that they figured this is a fucking screw-nut. |
| Demuro: | Yeah get rid of her [unintelligible/overlapping voices] . . . |
| Myers: | In my opinion they looked at her as somebody ain't wrapped too fucking tight. |
| Demuro: | Well I told [Myers' rival, the ward leader] she looked at me like ya know I told her. |
| Myers: | Can you - I don' t- this blows my hair around Dom can you [unintelligible/overlapping voices] little tiny bit. |
| Demuro: | I'll put the air on yeah. I - I told [the ward leader], look [ward leader] what I did before - what I'm gonna do now is different. Less votes I don't care if I'm #1, #2 #3 less votes. I'll do it for you, I didn't say I'll do it for Ozzie [Myers] to her, I just said I'll do it for you. And I'm telling you the same thing. You want to give me less [money] - I don't want no aggravation |

12

you see that shit of getting in trouble. I can't afford that. You know these [FBI] mother fuckers lookin at me that makes me nervous. Makes me very, very nervous. It [unintelligible/overlapping voices] . . .

In his motion, Myers attempts to frame the portion of the recording he objects to as somehow unrelated to his own criminal activity and appears to suggest that "do the thing you do" has no meaning for Myers. ECF No. 33 at 1E. Having participated in the above conversation, however, later that same day Myers and Demuro have the following exchange:

Demuro: And then when - and then when [the ward leader's candidate] runs again, she [the ward leader] hands me $100.

Myers: Yeah.

Demuro: She hands me a hundred bucks and said ya know "do your thing." But see I – that - that shit's over like you said, what you did 50 years ago gotta call it- gotta watch, ya know what I mean. I'll vote the people that don't come, if it ain't enough for her, keep her money. She can keep her fucking money. I don't want no money if she's gonna try to force me to do something I don't want to do, really.

Here, Demuro confirms for Myers that he intends to proceed differently in the ballot stuffing scheme to avoid discovery by law enforcement, referring back to the earlier conversation. Again, Myers does not object to Demuro "doing his thing" by "ringing up votes." Here is another tacit admission by Myers that illegal activity was taking place under Fed. R. Evid. 801(d)(2)(B). Instead of protesting or separating himself from the ballot stuffing, Myers moves on to discuss with Demuro how to extract money from another partisan supporting a candidate for elective office.

Myers: Uh, I mean if there's something he can bring to the table for [a candidate] I'm really interested in. If - if he can go say well, I can get ward A, B, C, let's just use that as an example. And if that's the case and it takes some money to do it and we put - and we meet A, B, C, then I'll negotiate with him ya know.

13

| | |
|---|---|
| Demuro: | Yeah why not. |
| Myers: | I mean I ain't beyond it, if he wants to grab a few bucks, I don't give a shit ya know, it ain't my money, it's gonna be the fuckin candidate's money. |
| Demuro: | Ain't your money and ain't my money either. |

**May 8, 2017 Recording**

Next, Myers complains about the admissibility of portions of conversations recorded on May 8, 2017. ECF No. 33 at 1F and G. The exchanges are more fully reproduced below. First, Myers complains about an excerpt in which Demuro referenced Myers' rival, the ward leader, and the ward leader's intention to pay for fraudulent votes. *Id*. In context, the pertinent excerpt begins with Demuro referencing how he will add fraudulent votes in support of Myers' preferred candidate. Myers then turns the conversation towards adding fraudulent votes on election day for candidates that the rival ward leader opposed in order to undermine that ward leader's preferred candidates.

| | |
|---|---|
| Demuro: | Listen I'm definitely gonna work hard for [your judicial candidate]. |
| Myers: | Yeah, ya know you're gonna [clears throat], ya know I'll have some more stuff for you, some more material. |
| Demuro: | Yah I'm definitely [overlapping voices] gonna work hard for her. |
| Myers: | We're gonna be - we're gonna- we're gonna have a good year. Good, good primary. |
| Demuro: | I think well I'm gonna - I'm gonna . . . |
| Myers: | We gotta - here's what else we gotta do. Anybody that [the ward leader] is not on board with like for example, um, she ain't gonna be on board with [a candidate for district attorney], ah, so what we gotta do there is, we got to, ah, we got to pump [that candidate] up. Now I don't think [that candidate] can win, um, but that's [a labor leader]'s guy, and I also don't think [another candidate] can win. |

14

| | |
|---|---|
| Demuro: | No. |
| Myers: | And if either one of them win, what does it mean to me and you? |
| Demuro: | Nothing. |
| Myers: | Well that's the point. [Unintelligible/overlapping voices] are you a lawyer? Am I a lawyer? |
| Demuro: | No, I'm not [overlapping voices] - I'm not - I'm not looking or a job. |
| Myers: | No, and then there's no jobs there unless you're a lawyer. |
| Demuro: | Unless you're a lawyer exactly right.   Unless a personal job. |
| Myers: | No, well you know I mean I'm, I'm talkin' about the DA, there ain't no personals [overlapping voices]. |
| Demuro: | Oh, for the DA no there's nothing there.   Nah. |
| Myers: | Unless you're a lawyer, what are you gonna do. |
| Demuro: | Listen, listen I'll give him extra votes - you know what I'll do, I'll, I'll give him extra votes and I'll make him come… |
| Myers: | He's gotta come - you gotta make him come high- now you gotta get over here. |
| Demuro: | Over here yeah. I'll make him and [your judicial candidate] I'll make them - I'll, I'll do my shit, I'll do my stuff how I'm gonna do it, and I'll make them come up. |
| Myers: | You gotta talk to whoever else we can in the wards. |
| Demuro: | Make them you know, ah, they gotta do what you gotta do, ya know, I mean, I mean I'm - I , I got a system, it's gonna be good for, for the votes, for the fuckin votes. That's all I wanna do. |
| Myers: | We gotta talk to some others too. |
| Demuro: | Alright, we'll have a talk with them yeah you know. |
| Myers: | We'll have, ya know, some ah, some literature for them. |

15

Then the conversation turns towards the money offered by the ward leader to Demuro, and Myers and Demuro discuss which candidate the ward leader is likely supporting.

Demuro: Well you gotta watch cuz she'll drive around Election Day the bitch [ward leader].

Myers: Fuck her I don't care about [overlapping voices].

Demuro: I'm, I'm not worried about - you see how I walked in with you tonight did I worry about her? I mean I get along with her you know I don't want to argue and fight I really don't want to argue and fight with her I don't, but…

Myers: [The ward leader] found a ticket for [her boyfriend], why didn't she buy a ticket for you?

Demuro: Well that's the thing, she find a ticket for [the ward leader's boyfriend] and, and [Myers' family member] said to me that she's got some money in an envelope for me for one of her candidates if I could put the extra votes for her. I don't know who that is. [Myer's family member] was tellin' me, [he] said she's - I'm not kidding you, "Dom," she pulled - called me over. Said alright, whatever she wants.

Myers: Yeah, what's she's gonna try to help that, that [unintelligible] [judicial candidate] kid.

Demuro: Is she gonna try to help him?

Myers: Well that, that's who she's pushing she's around talking for him at ward meetings.

Demuro: The one that you had, the one that, the one that was with ah [unintelligible] the other night?

Myers: Yeah, the kid did [the ward leader's boyfriend] [unintelligible] and [the ward leader's boyfriend] ain't getting paid what she is.

Demuro: Where the fucks that [unintelligible].

Myers: No, it well maybe she's got money for you for ah um maybe she's trying [a candidate for district attorney]. But if it's a judge it would have to be, ah, [the kid].

| | |
|---|---|
| Demuro: | Did he give her money? |
| Myers: | Who? |
| Demuro: | [The kid.] |
| Myers: | Well [the ward leader's boyfriend] said he's workin for free but I . . . |
| Demuro: | Yeah. |
| Myers: | There's no fuckin way in the world that [the ward leader]'s working for free. |
| Demuro: | No, no, no she's not working for free. The only problem with her Oz, she wants to hand you a hundred, tell you to give an extra 15, 20 votes the way you do it, and then she don't, and then she wants to give you a hundred, and then if it don't happen right, then she goes bananas.  Ya know she doesn't know how to, she's like I, I can't describe her. Really, I can't, it's hard, it's just hard. You know I just don't . . . |

Lastly, Myers complains about an excerpt in which Demuro recounts how the ward leader, Myers' rival, accused Demuro and Myers of working together by ringing up votes to fraudulently defeat at the polls a judicial candidate supported by the ward leader.  In the full exchange, Demuro and Myers discuss how Demuro manipulated votes at Myers' direction to defeat the ward leader's candidate.  In his responses, Myers is clearly manifesting his adoption or belief in the truth of the existence of the ballot stuffing scheme.  The entire exchange – including the portion about which Myers complains – is admissible as non-hearsay under Rule 801(d)(2)(B).  The relevant excerpt is reproduced below.

| | |
|---|---|
| Demuro: | Remember when we took care of ah what was her name? The fuck was her name that one we beat, [the ward leader's candidate]. |
| Myers: | Yeah. |
| Demuro: | I remember [the ward leader] was gonna commit suicide. |
| Myers: | You put the fuckin mojo on her. |

17

| | |
|---|---|
| Demuro: | The mojo? She - [the ward leader] said mother fuckers like you - meaning me - you, you, yeah, she said, yeah, mother fuckers like you that cheat, add votes, she said that's how the fuck she lost. Mother fuckers like you. |
| Myers: | She's so fuckin [overlapping voices] she's an evil witch. |
| Demuro: | I, you know I try to stay for - I don't want to, I don't want no arguments with her I don't want, ya know I don't just stay friendly with her and that's about all I do with her, ya know, I mean I just stay friendly with her, that's all I do. She, she's a… |
| Myers: | Watch, watch it. |
| Demuro: | I got it. She's got a nasty mouth, Oz, she's, she could, she could sure assault you in front of people you know? |
| Myers: | Yeah, I know she will. |
| Demuro: | I mean she did it to me. |
| Myers: | And she seems like she gets a lot of pride in doin' that. |
| Demuro: | That time we beat [the ward leader's candidate] and I walked in with them results she made a total fool out of me. You know what a fool is? She made a fool out of me. "That was your friend no good Ozzie got you fuckin puttin them votes for his people up. You're no fucking…" |
| Myers: | I'm no good. What are you, her? |

Again, instead of objecting or distancing himself in any way from blatant ballot stuffing, Myers recounts with Demuro how the pair undermined Myers' political rival and a candidate that ward leader was supporting.

### III. CONCLUSION

In sum, the portions of the recordings that Myers objects to are properly admissible in evidence. The full excerpts, including those referenced in Myers' motion *in limine* comprise Myers' own statements or adoptive admissions and because Demuro's statements are otherwise

18

admissible to place Myers' responses in an understandable context. For these reasons, the government in this case respectfully submits that defendant's second motion *in limine* should be denied.

                                            Respectfully submitted,

                                            JENNIFER ARBITTIER WILLIAMS
                                            Acting United States Attorney

By:

                                            /s/   Eric L. Gibson
                                            ERIC L. GIBSON
                                            RICHARD P. BARRETT
                                            Assistant United States Attorneys

Dated:   March 26, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Response in Opposition to Defendant's Second Motion *in Limine* has been served upon all counsel of record electronically and via ECF.

                                              s/ Eric L. Gibson
                                              ERIC L. GIBSON
                                              Assistant United States Attorney

Dated: March 26, 2021