**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | NO. 20-CR-210 |
| MICHAEL "OZZIE" MYERS | : | |

### GOVERNMENT'S MOTION FOR A WRITTEN JURY QUESTIONNAIRE

The United States of America, by its attorneys, Jennifer Arbittier Williams, Acting United States Attorney for the Eastern District of Pennsylvania, and the undersigned counsel, respectfully requests that this Court consider issuing a thorough written questionnaire to prospective jurors in advance of trial, in addition to conducting the regular in-person oral voir dire process on the eve of trial. There are several advantages to using a written questionnaire in advance of bringing prospective jurors to the courtroom for jury selection in this case. The answers to the questions may identify persons who report deep-seated biases towards the parties or who hold preconceived opinions about the electoral process in Philadelphia. Using the written answers to narrow the number of prospective jurors brought to the courtroom for in-person voir dire may aid the process of impaneling an impartial jury under the circumstances of this case. At the same time, reducing the number of prospective jurors brought to the courtroom through the screening process afforded by questionnaires may serve an ancillary purpose – alleviating concerns about large, indoor concentrations of persons during the pandemic. Defense counsel does not object to this request.

I.     **INTRODUCTION**

In this case, former U.S. Congressman Michael "Ozzie" Myers is charged by indictment with conspiring to violate voting rights by fraudulently stuffing the ballot boxes – also known as ringing up votes - for specific political candidates in the 2014, 2015, and 2016 primary elections, bribery of an election official, falsification of records, voting more than once in federal elections, and obstruction of justice.   Indictment (ECF No. 1).   Specifically, Myers is alleged to have bribed Domenick Demuro, the Judge of Elections for the 39th Ward, 36th Division in Philadelphia, in a fraudulent ballot stuffing scheme over several years.   *Id*., Count One ¶ 11.  The indictment also charges Myers with falsifying records and obstruction of justice alleging, among other things, that Myers: instructed Demuro not to discuss the "ballot stuffing" over the telephone; advised Demuro to conceal the receipt of bribes by providing fictitious names to be listed as the payees on checks drawn on the campaign accounts of Myers' preferred candidates and unwitting clients; advised Demuro that he would hand Demuro bribe payments in the form of checks after the deadline for submitting the last campaign finance report prior to the May 2017 primary to avoid scrutiny; had Demuro sign receipts for bribes paid in cash to create a false paper trail appearing to justify the payments; and provided a check to Demuro drawn on the campaign account of Myers' client candidate and made payable to Demuro's spouse, and later falsely characterized on the unwitting candidate's campaign finance report as supporting a "get out the vote" effort.   Indictment, Count Eight ¶¶ 2(a)- 2(e).

## II. A JURY QUESTIONNAIRE WILL BENEFIT THE ADMINISTRATION OF JUSTICE IN THIS CASE BY MORE EFFICIENTLY AND EFFECTIVELY IDENTIFYING BIASES AND PREJUDICES OF PROSPECTIVE JURORS

### A. Written Jury Questionnaires Offer Advantages Over Oral Voir Dire Alone

It has long been recognized that "[v]oir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991). To serve those ends, Federal Rule of Criminal Procedure 24 vests in district courts broad discretion to control the nature and extent of the examination of potential jurors. Fed. R. Crim. P. 24; *see Mu'Min*, 500 U.S. at 424. This discretion extends to the decision to submit a jury questionnaire to prospective jurors prior to trial. *See United States v. Martinez-Salazar*, 528 U.S. 304, 308 (2000) ("Prior to jury selection, the District Court gave the prospective jurors a written questionnaire."); *see also United States v. Campa*, 459 F.3d 1121, 1147 (11th Cir. 2006) (describing the district court's voir dire as "a model voir dire for a high profile case" where "the court carefully crafted [questions] with the parties' assistance," which were "detailed and neutral").

In an appropriate case, written jury questionnaires offer several advantages over oral voir dire alone. Written jury questionnaires (1) have been shown to elicit more candid responses on sensitive topics; (2) allow jurors more time to think through the questions and give complete answers; (3) encourage shy jurors, who might otherwise not speak up or raise their hands, to share their views; (4) ensure that the venire panel is not tainted by the bias of any single potential juror; and (5) expedite voir dire by providing counsel with advance information concerning each prospective juror. *See* Lilley, Lin S., *Let Jurors Speak the Truth, in Writing: Some Jurors Aren't Fully Candid during Oral Voir Dire. When You Hand Them a Supplemental Juror*

*Questionnaire and a Pen, Many Will Feel Free to Open up.,* Trial J. for the Am. Ass'n for Just. 41, No. 7, 64–69 (2005); *see also Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 880 (2017) ("Lawyers may use questionnaires or individual questioning of prospective jurors in order to elicit frank answers that a juror might be reluctant to voice in the presence of other prospective jurors.").[1]

Written jury questionnaires are especially valuable in cases involving sensitive and polarizing issues. For example, written jury questionnaires are regularly used in federal courts across the country, especially in matters involving civil rights, to better enable the courts and the parties to filter out potential jurors who are biased for or prejudiced against the parties and to select an impartial jury. *See, e.g., United States v. Fattah et al.,* No. 15CR346 (E.D.Pa.) (prosecution for alleged political corruption); *United States v. Edwards*, No. 11CR00161 (M.D. N.C.), ECF Nos. 214, 262 (prosecution for alleged campaign finance violations); *United States v. McGregor et al*, No. 10CR00186 (M.D.Al.), ECF Nos. 318, 381-1 (prosecution for alleged political corruption); *United States v. Ring*, No. 08CR274 (D.D.C.), ECF Nos. 76, 79 (prosecution for alleged political corruption); *United States v. Burge*, No. 1:08CR846 (N.D. Ill.) (prosecution for alleged obstruction of justice related to alleged constitutional violations committed under color of law); *United States v. Melton*, No. 03:08CR107 (S.D.M.S.) (prosecution for alleged constitutional violations committed under color of law); *United States v.*

---

[1] Questionnaires can be extremely effective at promoting efficiency. Juror questionnaires were employed in *United States v. Gary Eye et al., No. 05CR344-01 (W.D.Mo.),* and significantly reduced the number of prospective jurors who were required to appear in person for selection. In that capital prosecution for a racially motivated murder, 334 prospective jurors completed a detailed questionnaire prior to selection, and of those prospective jurors, 142 - approximately 42 percent - were excused for cause by agreement of the parties and the district court prior to the beginning of oral voir dire, and were not required to appear in-person on the date of jury selection. *Id*. at ECF Nos. 288, 294.

*Walker & Ramsey*, No. 1:04CR91 (N.D. Ga.) (prosecution for alleged murder of DeKalb County, Georgia, sheriff-elect committed under color of law); *United States v. LaVallee*, No. 1:00CR481 (D. Co.) (prosecution for alleged constitutional violations committed under color of law). Election fraud has become a sensitive and polarizing issue.

In these circumstances, oral voir dire alone is likely to fall short. Hyper-partisanship associated with the election fraud issue may lead some prospective jurors to harbor extraneous, broad predispositions that would inappropriately influence their determination of the facts of this specific case. At the same time, those prospective jurors may not recognize that their own pre-conceived opinions may influence their determinations and interfere with their ability to be fair and impartial. *See* Dr. Ken Broda-Bahm, *Take it Seriously: Potential Jurors Cannot Self-Diagnose Their Bias*, https://www.persuasivelitigator.com/2019/09/take-it-seriously-potential-jurors-cannot-self-diagnose-their-bias (Sept. 16, 2019) (examining social science research, concluding that the "just ask them" approach to voir dire does not work, and recommending that written questionnaires be completed by prospective jurors at home). In these circumstances, "[a] probing voir dire examination is the best way to ensure that jurors do not harbor biases for or against the parties," *Sampson v. United States*, 724 F.3d 150 163–64 (1st Cir. 2003) (citation omitted).

Simply asking jurors publicly, in a voir dire setting, whether they harbor any bias or prejudice, may do little to avoid potentially biased jury decisions. *See United States v. Groce*, 682 F.2d 1359, 1361 (11th Cir. 1982) (district court judge "belie[ved] that no prospective juror would admit openly to racial prejudice"). Many people are uncomfortable sharing such views during oral voir dire in front of others who may have diametrically opposed perspectives, while

some intentionally hide their views. *See Price v. Kramer*, 200 F.3d 1237, 1254 (9th Cir. 2000) (During voir dire in alleged officer misconduct trial, one juror "described a negative experience he had with a police officer when he was a teenager," but he withheld "the fact that physical contact occurred" since "he did not think it was . . . important" and "he was trying to be brief." Another juror "failed to mention, first, that his half-brother was a police officer and, second, that he had participated in a ride-along approximately fourteen years earlier in which he had witnessed improper police conduct."); *Zerka v. Green*, 49 F.3d 1181, 1184 (6th Cir. 1995) ("[T]he court concluded that [juror] deliberately and intentionally concealed his relationships with police officers for two reasons: to get on the jury, and to a lesser extent, because he was embarrassed about speaking in front of other jurors."); *Elmore v. Foss*, No. 2:16-CV-01453-JKS, 2018 WL 6591065, at *6–7 (E.D. Cal. Dec. 14, 2018) ("The trial court found Juror No. 6 . . . intentionally with[e]ld[ ] during voir dire a bias against law enforcement that, if it had been disclosed, would most assuredly have resulted in a peremptory challenge" after "jury was unable to reach a verdict," and other jurors said that "Juror No. 6 made up his mind early and was no longer engaging in deliberations" and "had a bias against police officers or detectives.").

### B. A Written Jury Questionnaire is Especially Important under the Circumstances of this Case

This case, like many civil rights cases that involve potentially sensitive and polarizing issues, calls especially strongly for the use of a written jury questionnaire. The trial will involve a complex intersection of individual rights and the legitimacy of elections and election officials to effectively carry out their jobs. Due to increased public attention regarding election fraud, people across the country have developed strong personal and group convictions on these issues. This is strongly evidenced by the recent attack on the Capitol, which was motivated in part by

strong feelings aroused over allegations of election fraud, as well as strong reactions to the attack. *See A Mob Insurrection Stoked by False Claims of Election Fraud and Promises of Violent Restoration*, https://www.washingtonpost.com/national-security/trump-capitol-mob-attack-origins/2021/01/09/0cb2cf5e-51d4-11eb-83e3-322644d82356_story.html (January 9, 2021). Thus, the case evidence may touch on deeply held beliefs in our communities, including feelings of trust and mistrust in the authorities charged with ensuring election integrity. Under the present circumstances, identifying individuals' deeply held beliefs may prove necessary for meaningful jury selection. Oral voir dire alone may not be able to achieve that objective.

Under these circumstances, a questionnaire may be particularly important in aiding the Court to make sensitive inquiries, while permitting the prospective jurors time and space to thoughtfully reflect on tough questions, and to answer them in private, candidly and completely, helping ensure an impartial jury. *See United States v. Causey*, 185 F.3d 407, 430 (5th Cir. 1999) (noting that the jury questionnaire improved voir dire in a police brutality prosecution because it gave both sides "a great deal of insight into the potential jurors' views"). Thoughtful written responses to probing questions likewise may fuel efficient, oral voir dire, thereby eliminating the need to question each prospective juror, and allowing the Court and the parties to follow-up with a few selected members. The information gleaned from the questionnaire may aid each side to exercise peremptory challenges intelligently.

In addition to their general feelings toward election fraud and ballot stuffing, potential jurors may have strong, pre-conceived notions of Philadelphia politics, specifically. Prospective jurors may have already been exposed to the allegations—and evidence—in this case through national and local media outlets. These two considerations further militate in favor of a written

jury questionnaire.

In the current political climate, prospective jurors could have already experienced significant emotional reactions to news of the indictment based upon previously held convictions. This is especially the case since potential jurors from this district may have family members or friends who are impacted by Philadelphia politics.

Regardless of how potential jurors feel about election fraud generally, and how they feel about the political environment in Philadelphia, potential jurors may have seen media coverage and are likely to have had some exposure to the case and the allegations. Given the length and scope of the civil rights conspiracy charged in the indictment, and the history and background of the defendant, a former U.S. Congressman, the indictment has received significant national and local media attention, and it will undoubtedly receive more before and during trial. *See, e.g., Ex-Philadelphia Congressman Ozzie Myers Charged with Ballot Stuffing, Bribery*, https://www.reuters.com/article/us-usa-election-myers-idUSKCN24O2LG (July 23, 2020); *A Former Pa. Congressman Caught in 1970s Abscam Sting Has Been Indicted Again-This Time for Election Fraud*, https://www.inquirer.com/news/ozzie-myers-indicted-voter-fraud-Phiuladelphia-domenick-demuro-abscam-20200723.html (July 23, 2020); *Former Congressman Indicted On Voter Fraud, Bribery Charges*, https://www.politico.com/news/2020/07/23/former-congressman-indicted-voter-fraud-bribery-charges-379935; *Former Philly Congressman Convicted in Abscam Sting Now Charged with Election Fraud*, https://www.whyy.org/articles/former-philly-congressman-convicted-in-abscam-sting-now-charged-with-election-fraud (July 23, 2020); *Former Democratic Congressman Ozzie Myers Charged with Bribery, Ballot Stuffing*, https://www.the hill.com/homenews/news/508770-former-democratic-congressman-ozzie-

myers-charged-with-bribery-ballot-stuffing (July 23, 2020); *Former Pennsylvania Democratic Congressman Ozzie Myers Charged with Bribery, Ballot Stuffing*, https://www.nbcnews.com/politics/congress/former-democratic-congressman-charged-bribery-ballot-stuffing-n1234704 (July 23, 2020); *Michael Myers, Ex Philadelphia Congressman Known for Abscam Scandal, is Charged with Election Fraud*, http://a.msn.com/01/en-us/BB176GRe?ocid=se (July 23, 2020).   Because of the extensive media coverage, members of the venire are likely to have been exposed to, and formed opinions about, the allegations in this case.

Oral voir dire will only go so far in rooting out potential juror bias, and a confidential jury questionnaire would materially aid in the effort to ensure the selection of a fair and unbiased jury.  It would be especially helpful in the case at hand, where, in addition to the usual considerations associated with election fraud, potential jurors are likely to have been exposed to—and possibly even participated in—commentary on the allegations in this case.

Finally, a written jury questionnaire is beneficial because of the ongoing COVID-19 pandemic.  Answers provided on the questionnaire may by themselves identify prospective jurors who should be stricken for cause, obviating the need for those individuals to appear in the courthouse for in-person screening during the oral voir dire.  Eliminating those prospective jurors early can reduce concerns about large, indoor concentrations of persons during the pandemic.

The government has consulted with defense counsel.  Defense counsel has no objection to the use of a written questionnaire, and believes it would be quite useful.  The parties would like to present the Court with a proposed questionnaire for the Court's consideration.  In light of

the scheduling difficulties associated with the pandemic and the current trial schedule for the Eastern District, the government is filing this motion early to provide the Court with sufficient time to rule on it, in addition to providing the Clerk of Court with adequate time to send to prospective jurors questionnaires, and providing the prospective jurors with suitable time to complete and return them, should the motion be granted.

### III.     CONCLUSION

To ensure that the jury empaneled for the trial of this matter will be fair and impartial—able to render a verdict based on the evidence alone, rather than on any bias for or against partisans, political operatives, political machines, or political parties—the United States respectfully asks this Court to consider using a written jury questionnaire.   The government also respectfully requests a conference on this motion.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney

By:

/s/   Eric L. Gibson
ERIC L. GIBSON
RICHARD P. BARRETT
Assistant United States Attorneys

Dated:   April 23, 2021

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the Government's Motion for a Written Jury Questionnaire has been served upon all counsel of record electronically and via ECF.

                                        s/ Eric L. Gibson
                                        ERIC L. GIBSON
                                        Assistant United States Attorney

Dated: April 23, 2021