Noah Gorson, Esquire
Identification No. 34323
email ng@gorsonlaw.com
Arnold Silverstein, Esq
Identification No. 18344
email arnold.silverstein@gmail.com
1845 Walnut Street # 1300
Philadelphia, PA 19103
(215) 569-4661                                                                                    Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| VS. | : | CRIMINAL NO. 20-CR-210 |
| MICHAEL "OZZIE" MYERS" | : | |

MOTION IN LIMINE TO ALLOW WITNESS TO TESTIFY TO FACTUAL AND EXPERT MATTERS

1. Defendant. Michael Myers, is charged with a multi count indictment alleging conspiracy, bribery and other charges.

2. Defendant will present the testimony of an expert witness, Steven Kaplan, who has served as chief counsel to the Philadelphia Democratic City Committee for approximately 20 years. He is very familiar with the structure of the Democratic party; the number of Wards and Divisions in the City of Philadelphia and the number of votes city wide candidates need to be elected.

3. Mr. Kaplan's report and anticipated testimony is a mixture of facts and opinions both of which are germane to the matter before the Court. (A copy of Mr. Kaplan's report is attached hereto and marked Exhibit "A".)

4. Mr. Kaplan will testify to hearing the terms "ring em up" and "bang em up" 100's if not 1000's of times and discussing the meaning of these terms with numerous ward leaders and committee people.

5. Based on his experience he will testify to a reasonable degree of certainty in the political community that these terms are used in discussing getting out the vote, most typically meaning to knock on doors or ring doorbells to get residents out to vote.

6. Expert testimony is governed by Fed Rule Evid Rule 702 which provides as follows:

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert has reliably applied the principles and methods to the facts of the case."

7. Mr. Kaplan is qualified as an expert and his testimony will help/aid the trier of fact determine the meaning of these words, which is a crucial issue in this case.

8. Mr. Kaplan's anticipated testimony is based on sufficient facts or data.

9. The text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony. *See, e.g.,* United States v. Jones, 107 F.3d 1147 (6th Cir. 1997) (no abuse of discretion in admitting the testimony of a handwriting examiner who had years of practical experience and extensive training, and who explained his methodology in detail); Tassin v. Sears Roebuck, 946 F.Supp. 1241, 1248 (M.D.La. 1996) (design engineer's testimony can be admissible when the expert's opinions "are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and the conclusions he reaches"). See also Kumho Tire Co. v. Carmichael, [143 L. Ed. 2d 238,] 119 S.Ct. 1167, 1178 (1999) (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

10. Expert testimony must be helpful to the jury to be admissible. United States v. Winbush, 580 F.3d 503, 510-11 (7th Cir. 2009) (citing Fed. R. Evid. 702). In other words, a witness should not be allowed to put an "expert gloss" on a conclusion that the jurors should draw themselves. *See* York, 572 F.3d at 423 ("'Interpretations' of unambiguous words or phrases that are plainly within the jury's understanding are unlikely to be admissible under Rule 702.") (quotations omitted). "[E]xpert testimony does not assist where the jury has no need for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic." 29 Charles Alan Wright & Victor James Gold, *Federal Practice & Procedure* [*711] § 6264 (1997); *see also* Florek v. Vill. of Mundelein, Ill., 649 F.3d 594, 602-03 (7th Cir. 2011).

11. Defendant submits that the circumstances in this case are on point with that of an agent or officer interpreting drug terms based on his/her experience. See United States v. Gibbs,190 F. 3d 188, 199 (2d Cir.199): It is well established that experienced government agents may testify to the meaning of coded drug language under Fed. R. Evid. 702.

12. Assuming, arguendo, that the Court is not inclined to admit the witness's testimony as that of an "expert", Fed. R. Evid. 701 provides that a lay witness may provide the jury with opinion or inference testimony in situations such as the instant matter presents. See discussion set forth in the Government's response in Opposition to Defendant's Motion to Bar Admission of the Audiotapes in Section "C" Lay Opinion is Admissible to Provide Clear Understanding of the Recordings, which discussion is incorporated herein as if more fully set forth.

13. Along with opinion testimony, Mr. Kaplan will testify to how elections are conducted in Philadelphia, and more particularly, how primary elections are conducted. He will testify to the number of votes candidates need in order to appear on the general election ballot, and the makeup of wards and divisions in Philadelphia.

14. Further, Mr. Kaplan will testify as to how patronage jobs are distributed in the city and that committee people are rewarded with patronage jobs for producing votes in their division on election day.

WHEREFORE Defendant prays the Court enter an Oder In Limine allowing the Defense to present expert testimony for the meaning of "ring em up" and "bang em up" and to all facts stated in the experts report and this motion.

RESPECTFULLY SUBMITTED:

BY: /s/ *Noah Gorson*
NOAH GORSON, ESQUIRE
ATTORNEY FOR DEFENDANT


BY: /s/ *Arnold Silverstein*
ARNOLD SILVERSTEIN, ESQUIRE
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was served upon the following in the manner indicated on today's date of September 7, 2021.

ECF
**Honorable Paul S. Diamond**
U.S. Courthouse
601 Market Street, Room 14614
Philadelphia, PA 19106-1773

ECF
Department of Justice
United States Attorney's Office
Eastern District of Pennsylvania
**Assistant United States Attorney**
**Eric Gibson, Esq.**
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476

BY: _/s/ Noah Gorson_
NOAH GORSON, ESQUIRE

**STEVEN KAPLAN**
3000 Island Boulevard Apt. 1504
Aventura, Florida
(215) 530-1776
E-MAIL skaplanlaw@yahoo.com

I am a Pennsylvania attorney, having been admitted to the Pennsylvania Bar in 1979. I graduated from Penn State University in 1975, with a degree in accounting, and Delaware Law School of Widener in 1978. I was employed by the Philadelphia Court of Common Pleas in the Family Court Division from 1980 to 1985; the Philadelphia District Attorney's 's Office from 1985 to 1995; the City of Philadelphia Controllers Office as Chief of the Fraud Unit from 1995 to 1998 at which time I was given a City of Philadelphia contract, by then mayor Edward G. Rendell to represent the City in its efforts to collect unpaid child support which contract remained in effect until 2017. During this entire time, I remained active and engaged in local Philadelphia politics; including as a volunteer for the Philadelphia Democratic Executive Committee. In this capacity I assisted dozens of candidates for office in their efforts to get elected. In 1999 I began assisting Congressman Robert A. Brady in his effort's to be elected to the United States Congress, which efforts proved successful. I continued to assist him in the next nine (9) election cycles and until his retirement from office recently. I am now retired. As part of my legal career, I was counsel to the Philadelphia Democratic Party for 22 years, 18 as lead counsel. During some of my tenure in politics I acted as counsel for the Philadelphia Democratic party and was responsible for overseeing elections, primary and general. During my time in politics, I met with and spoke to both ward leaders, committee people and campaign workers, and candidates regarding elections and election strategy for 24 years.

I am familiar with how the Democratic party is set up in wards, which are overseen by ward leaders, and then split into smaller local divisions overseen by committee persons. I have worked with and or discussed politics with both ward leaders and committee people for decades. During this time, I became familiar with their use of language, political slang, argot and vernacular which is commonly used in their discussions and political activity. It is during conversations with and among these politicians for approximately twenty-five (25) or more years that I became familiar with the slang, argot and vernacular used while discussing elections and working in elections. Many of these conversations in which I was a participant covered a number of election issues, including but not

limited to how to get out the vote. Over the years I learned numerous words and phrases used by both committee people, ward leaders and political consultants. On numerous occasions the terms "ring em up" and "bang em up" were used by ward leaders, committee people and campaign workers. Based upon my experience over approximately twenty-five (25) years, what these terms typically mean in conversations with ward leaders, committee people and campaign workers it is my opinion that these words are used to mean "get out the vote", and these terms are used to emphasize the need for all participants in the election process to work hard to get the voters out of their houses to the polling location to vote.

I am also, familiar with primary elections and the number of votes typically necessary to prevail. I am familiar with how judicial campaigns are run in Philadelphia including for both endorsed and unendorsed candidates. I am very familiar with political consultants who typically work in democratic primaries and how they work for endorsed and unendorsed candidates, and deal with wards where they do not have ward leader support.

It is important to understand that ward 39A, division 36, is a single voting division in Philadelphia and the results in this division would not typically determine who wins the primary. Philadelphia is split into 69 separate wards each representing an area of the city. Each ward is split into numerous voting divisions, usually between 30-40 divisions per ward. Each division has two elected committee people. They are elected by the registered voters in the divisions. Each party has two committee people per division. Each ward has a ward leader who typically endorses candidates (an endorsed candidate typically has an advantage over unendorsed candidates) in a primary election. The ward leaders are elected by the committee people in the ward. Most times the ward leaders will endorse the candidates chosen by the Philadelphia city committee chairman who is elected every 4 years by the ward leaders. Typically, each committee person will support the endorsed candidates in the primary election.

Political consultants are typically individuals who have been active in party politics. There are consultants who work for democratic candidates and different consultants who work for republican candidates. Candidates retain consultants to help them get elected in a party primary election. There are two elections each year, usually a primary election in April or May; and, a general election on the first Tuesday in November. The primary election is an intra-party election to determine which candidates will fill the open spots in the general election. The general election pits the Democratic candidates against Republican candidates and sometimes Independent candidates. In Philadelphia, where there is a very weak Republican Party, the winners of the Democratic primary are typically

elected in November. In the primary some candidates are endorsed by the party and consequently have the ward leaders and committee people supporting them. Some candidates are not endorsed and in those situations the consultant will try to get support from committee people and ward leaders. In most situations where the ward leader is not supporting a consultant's candidate the consultant will pay people, with good ward contacts to get their help in supporting their unendorsed and endorsed candidates and/or in getting committee people to support their unendorsed and endorsed candidate(s) in the ward.

In this case Michael Myers ("Myers") paid Domenic Demuro ("Demuro") to use his contacts city wide and in ward 39A to support the candidates that Myers, was retained to assist in getting a spot in the general election. Myers did not have a close relationship with the ward leader of ward 39A so he used Demuro, who was the ward chairman to organize the ward on behalf of his candidates and to help get the electorate out to vote for his candidates. The amount of money paid depended on the number of candidates Myers represented. Demuro in audio tapes used the terms "ring em up" and "bang em up". It is my understanding that the meaning of these terms is a critical issue in this case. I will testify to all facts contained in this report to a reasonable degree of certainty in politics based on my numerous years of political experience dealing with and/or talking with democratic ward leaders, committee people and election workers. During my years of experience, I have heard the terms at issue numerous times and know from my experience what these terms typically mean. Based on my experience with these terms "ring em up" and "bang em up" I will testify to a reasonable degree of certainty in the field of politics in Philadelphia that I have heard these terms used many times and based on this experience the terms are used when talking about getting voters out to vote in an election. Typically, they are used to mean "ring door bells" or go "bang on doors" to get the voters out to vote. I can and will attest, based on my experience in politics, that to a reasonable degree of certainty these terms are used in politics as a way of emphasizing the need to get out the vote. I can also testify to a reasonable degree of certainty that in a typical judicial primary election a candidate will need well in excess of 25,000 votes to win. Further, that Philadelphia is made up of 69 wards and that each ward is split into numerous divisions. In addition, I will testify to a reasonable degree of certainty in politics to the jobs performed by ward leaders, committee people and what a political consultant is and the job he/she performs in Philadelphia elections. I will testify to a reasonable degree of certainty in politics that committee people (party workers) who get out/produce the most votes are often rewarded with the best jobs by city committee or the ward leader.

/s/ Steve Kaplan, Esq.