IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | NO. 20-CR-210 |
| MICHAEL "OZZIE" MYERS" | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO ALLOW WITNESS TO TESTIFY TO FACTUAL AND EXPERT MATTERS**

The United States of America, by its attorneys, Jennifer Arbittier Williams, Acting United States Attorney for the Eastern District of Pennsylvania, and the undersigned attorneys, hereby responds in opposition to the defendant's latest pretrial motion *in limine* to allow an associate of defendant Myers to characterize the meaning of conversations, exchanges, and arrangements between Myers and a cooperating witness. ECF No. 71. Defendant's motion should be denied.

**I.      INTRODUCTION**

Former U.S. Congressman Michael "Ozzie" Myers is charged by indictment with conspiring to violate voting rights by fraudulently stuffing the ballot boxes – also known as ringing up votes - for specific political candidates in the 2014, 2015, and the 2016 primary elections, bribery of an election official, falsification of records, voting more than once in federal elections, and obstruction of justice. ECF No. 1.

A cooperating witness recorded a number of conversations with defendant Myers. Among the conversations, defendant was recorded: a) instructing the cooperating witness not to discuss the "ballot stuffing" over the telephone; b) advising the cooperating witness to conceal

the receipt of bribes by providing fictitious names to be listed as the payee on checks drawn on the campaign accounts of defendant's preferred candidates and unwitting clients by telling the cooperator, "I'm gonna get you a couple checks there's no question about that. If you want to give me a - a different name than [the cooperator's] that's your business…."; c) advising the cooperating witness that the defendant would hand the cooperator bribe payments in the form of checks after the deadline for the last campaign finance report before the May 2017 primary election because, "you don't wanna - you don't wanna be on any [candidate's campaign finance] report May 7th when the election is May 16th;" and d) discussing "receipts" for bribe payments in the form of cash and instructing the cooperator "if there was ever a question . . . you know you'd say well I gave the money out Election Day [to get out the vote]."  *See* ECF No. 1, Count Eight ¶¶ 2(a) through 2(d).

      Previously, defendant Myers argued that he should be permitted to introduce evidence that he paid other partisans and ward leaders to "organize their wards for [Myers'] candidates." ECF No. 32 at 1.  He also sought to introduce testimony from individual witnesses that Myers "never asked them to add false votes for his candidates in any election."  *Id*.  In response, the government argued that whether Myers chose not to bribe other election officials or ward leaders – or could produce political allies to testify to that effect – had no bearing on the specific crimes charged in the indictment.  ECF No. 35 at 4.  This Court agreed.  ECF No. 50.

      Defendant now argues that he should be permitted to explain away the content of his recorded conversations and the government's other evidence by employing a third-party political operative to opine on the intent of the speakers and the nature of and motivation for the monetary payments from Myers to the cooperating witness.  To accomplish this objective, Myers proposes

condensing the testimony of his friends and allies summarized in his previous unsuccessful motion, ECF No. 32, and repackaging and disguising it as "expert" opinion testimony offered by Steven Kaplan, former counsel to the Philadelphia Democratic Party, hand-picked by the Party's leader and Myers' political patron.[1]  Among other things, Kaplan's expertise is allegedly based upon the claim that he "has worked with and or discussed politics with both ward leaders and committee people for decades."  ECF 71 at 5.  In this context, Kaplan's proffered testimony is inadmissible whether characterized as "expert" testimony pursuant to Fed. R. Evid. 702 or lay opinion pursuant to Fed. R. Evid. 701.

## II.   ARGUMENT

### A.   Steven Kaplan's Proffered Testimony is Impermissible "Expert" Testimony.

Myers first attempts to offer Kaplan as an "expert" within the meaning of Fed. R. Evid. 702.[2]  ECF 71 at 1, 3.  Specifically, Myers asks this Court to permit him to call Kaplan as an expert to testify as to "the meaning of 'ring [']em up' and 'bang [']em up'" in this specific case. ECF No. 71 at 3.  However, Myers' proffer of "expert" testimony clearly runs afoul of Fed. R. Evid. 704(b)'s prohibition that no expert witness "testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime

---

1 The government anticipates that the cooperating witness will identify the leader of Philadelphia Democratic Party as one of the candidates Myers paid the witness to "ring up" votes for when he occupied elected office and his name was on the ballot.

2 To be clear, the government has proffered the FBI case agents as potential witnesses to opine on their understanding of portions of the recorded conversations between Myers and the cooperating witness.  ECF No. 29. However, the government has not invoked Fed. R. Evid. 702, nor proffered the agents as "experts."  As discussed below, the agents' lay opinions are admissible because they are the result of the particular things they perceived and experienced from the investigation itself and do not rely on some specialized knowledge from a field of expertise.

charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone." *Id*. Although he compares the Kaplan proffer to the testimony of a law enforcement expert in the field of narcotics trafficking, he ignores the limitations on testimony offered under Rule 702.

> There is . . . a [fine] line that expert witnesses may not cross. It is well established that experts may describe, in general and factual terms, the common practices of drug dealers. Expert testimony is admissible if it merely support[s] an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony. It is only as to the last step in the inferential process - a conclusion as to the defendant's mental state - that Rule 704(b) commands the expert to be silent.

*United States v. Watson*, 260 F.3d 301, 308-309 (3d Cir. 2001) (internal citations and quotation marks omitted). Rule 704 prohibits expert testimony "from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea." *United States v. Bennett*, 161 F.3d 171, 182 (3d Cir. 2001) (quotation omitted). Here, that is Kaplan's only purpose. His testimony is proffered to contradict the meaning of phrases as they were understood and employed by the participants in the criminal ballot stuffing scheme by offering to the jury a different, more benign explanation for the phrases allegedly informed by Kaplan's "expertise" and how others employed the phrases generally in other contexts according to Kaplan. If the testimony is not offered specifically to negate Myers' intent, it has no relevance at all. It is therefore not admissible under Rule 702.

    **B.    Steven Kaplans' Proffered Testimony is Impermissible Lay Opinion Testimony**

Despite proffering Kaplan as an "expert" within the meaning of Rule 702, Myers next assures the Court that even if Kaplan is not, in fact, an "expert," Kaplan's opinion testimony is still admissible as lay opinion under Fed. R. Evid. 701. Rule 701, however, provides that an

admissible lay opinion may not be based on "*specialized knowledge within the scope of Rule 702*" of the Federal Rules of Evidence.  Fed. R. Evid. 701(c) (emphasis added.)  Here, Kaplan's entire proffer is comprised of his alleged command of specialized knowledge of Philadelphia's Democratic Party and its politics generally, and not on any actual direct perception of the relationship or interactions between the cooperating witness and Myers.  *See* ECF No. 71, 5-8.  Rather than reconcile the irreconcilable, Myers simply ignores that Kaplan's proffer dooms his attempt to invoke Rule 701.  As the Third Circuit has previously held, admissible opinions in this context are based upon a "direct perception of the event, are not speculative, and are helpful to the determination of [the defendant's] involvement in the [criminal] scheme." *United States v. De Peri*, 778 F.2d 963, 977-78 (3d Cir. 1985).

While Myers cites to the government's Response in Opposition to his Motion to Suppress the Recordings, ECF No. 29, in support of his argument, he ignores the law on which it was based.  Numerous federal courts have indeed interpreted Rule 701 to permit lay opinion testimony, including testimony by law-enforcement agents, regarding impressions and interpretations of recordings, regardless of whether the testifying witnesses participated in or personally observed what was being recorded.  *See, e.g.*, *United States v. Flores*, 63 F.3d 1342, 1359-60 (5th Cir. 1995) (upholding admissibility of opinion testimony from co-conspirators about tape-recorded conversations in which they did not participate); *United States v. Saulter*, 60 F.3d 270, 276 (7th Cir. 1995) (upholding admissibility of opinion testimony by a non-party to recorded conversations); *United States v. Garcia*, 994 F.2d 1499, 1506-07 (10th Cir. 1993) (upholding admissibility of opinion testimony about the meaning of recorded phone conversations from an FBI agent not present during the conversations); *United States v. Savage*,

2013 WL 395482 (E.D.Pa. Feb. 1, 2013) (granting motion *in limine* to permit the Government to elicit the lay opinion and perceptions of FBI Special Agent with regard to his understanding of coded conversations between defendants captured on recordings and to provide context and clarification where the subject matter of those conversations is ambiguous); *United States v. Eiland*, 2006 WL 2844921 (D.D.C. Oct. 2, 2006) ("the lay witness need not actually have participated in the conversations in question in order to satisfy Rule 701(a)."). However, admissible lay opinion regarding the specific language employed amongst and between conspirators is built upon an evidentiary foundation that is more than mere generalized knowledge.

When permitting lay opinion testimony in this context, courts insist that the testimony of the witness offering the lay opinion relies on experience and information obtained *through the case at issue*. Myers wholly ignores this requirement and fails to address it at all in his motion. Lay witnesses may opine on their understanding of tape-recorded conversations where the opinion is helpful to the jury because, for example, "language on the tapes is sharp and abbreviated, composed with unfinished sentences and punctuated with ambiguous references to events that are clear only to *[the defendant] and his audience*." *United States v. De Peri*, 778 F.2d 963, 977 (3d Cir. 1985) (emphasis added). The trial court must still "vigorously [police] the government's examination of [the lay witness] to ensure that he [is] not asked to interpret relatively clear statements." *Id.*; *United States v. Dicker*, 853 F.2d 1103, 1108 (3d Cir. 1988) ("courts have construed the helpfulness requirement of Fed. R. Evid. 701 and 702 to allow the interpretation by a witness of coded or 'code-like' conversations" so long as those interpretations do not extend to "clear conversation.").

Merely ascribing Kaplan's own preferred meanings to conversations in which he either a) has no meaningful specific or contextual insight into, or b) did not participate, does not satisfy the requirements of Rule 701.  *See United States v. Dicker*, 853 F.2d 1103, 1110 (3d Cir. 1988). It is not clear from Kaplan's proffer whether he even reviewed the recorded conversations or testimonial account of the cooperating witness.   It is abundantly clear that he is merely opining on the general use of certain phrases without reference to the specific context of Myers' scheme with the cooperating witness.  ECF 71 at 5-6.  It is the witnesses' specific familiarity with the particular facts, transactions, and individuals involved in the case that support the admissibility of lay opinion testimony.  Where such intimate knowledge is lacking, the witnesses' opinion – like Kaplan's - is irrelevant.  *See United States v. Rollins*, 544 F.3d 820, 832-833 (7th Cir. 2008).

In *Rollins*, the Seventh Circuit affirmed the district court's admission of a law-enforcement agent's lay testimony providing his impressions and interpretation of recorded conversations to which he was not a participant.   Critically, however, the testifying agent in *Rollins* had familiarized himself with the case by listening to numerous recorded conversations, becoming "very familiar" with the recorded voices that he had monitored, interviewing witnesses who were familiar with the illicit conduct that was recorded, and observing activity that helped confirm the meaning of terms used in monitored recordings.  *Rollins*, 544 F.3d at 832.   The Seventh Circuit therefore concluded that "[t]hese bases for [the agent's] testimony defeat [the defendant's] claim that the government laid an insufficient foundation for this testimony."  *Id*.

Here, any admissible lay opinion testimony offered by the cooperating witness is based on his participation in the recorded calls themselves and his long association with Myers during the life of the scheme.  Similarly, the case agents investigating Myers' conduct came to their

understanding of the recorded conversations only as a result of the particular things they perceived and experienced from the investigation itself, as was the case in *Rollins*. In contrast, Kaplan comes nowhere close to establishing that his opinions are based on anything other than general specialized knowledge of Philadelphia politics, which renders them inadmissible.

WHEREFORE, for these reasons, the government in this case respectfully submits that defendant's Motion *in Limine* To Allow Witness To Testify To Factual and Expert Matters should be denied.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney

By:

/s/   Eric L. Gibson
ERIC L. GIBSON
RICHARD P. BARRETT
Assistant United States Attorneys


Dated:   September 16, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Response in Opposition to Defendant's Motion *in Limine* has been served upon all counsel of record electronically and via ECF.

s/Eric L. Gibson
ERIC L. GIBSON
Assistant United States Attorney

Dated: September 16, 2021