IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Crim. No. 20-210 |
| | : | |
| **MICHAEL "OZZIE" MYERS** | : | |

**O R D E R**

Political consultant and former Congressman Michael "Ozzie" Myers is charged with leading an election fraud conspiracy. The Government alleges, *inter alia*, that Myers bribed Domenick Demuro, Philadelphia Election Judge for the 39th Ward, 36th Division, to fraudulently add votes to certain candidate totals in the Primary Elections of 2014, 2015, and 2016. (Doc. No. 74.) Demuro and another codefendant have pled guilty to conspiring with Myers. Myers' trial is set to begin on June 7, 2022. (Doc. No. 86.)

Myers has filed three Motions *in Limine* asking me to: (1) allow him to present witnesses who will contradict Demuro (Doc. No. 46); (2) allow him to present the testimony of Steven Kaplan as an expert or fact witness (Doc. No. 71); and (3) exclude a recorded conversation between Demuro and Joe Cuccinotta (Doc. No. 87). Because I am being asked to make evidentiary trial rulings when trial has not yet begun, I must defer decision on two of Myers' three requests.

**I.   Witnesses to Contradict Demuro**

Myers anticipates that Demuro "will testify [at trial] that Defendant gave him money to coordinate the 39th ward for Defendant's candidates and to add fraudulent votes for Defendant's candidates in the primary election." (Doc. No. 46 at ¶ 5.) Demuro stated during an FBI interview that "he paid money to other election workers, not in the 39th ward, 36th division to fraudulently increase voter totals on behalf of certain candidates." (Id. at ¶ 6.) The FBI interviewed the "other

election workers," who denied Demuro's statement. (Id. at ¶ 8.) Myers seeks to call the "other election workers" to contradict Demuro.

I have a "duty to limit the jury's exposure to only that which is probative and relevant and must attempt to screen from the jury any proffer that it deems irrelevant. U.S. v. Romano, 849 F.2d 812, 815 (3d Cir. 1988) (citing Fed. R. Evid. 103(c)). I may thus deny "a motion *in limine* when it lacks the necessary specificity" as to what evidence the movant seeks to admit or exclude. Karpf v. Mass. Mutual Life Ins. Co., Civ. No. 10-1401, 2019 WL 468808, at *2 (E.D. Pa. Feb. 6, 2019). I may also defer evidentiary rulings "until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." Leonard v. Stemtech Health Sci., Inc., 981 F. Supp. 2d 273, 276 (D. Del. 2013).

Myers does not provide the number or identity of the proposed witnesses. He states only that he seeks to call those witness who told the FBI interviewed that "they never put up false or fraudulent votes." (Doc. No. 46 at ¶¶ 7, 9, 10.) I will likely allow the testimony of any defense witness who contradicts Demuro—who is likely a critical Government witness—on a material subject. Until Demuro actually testifies at trial, however, and Myers identifies the witnesses he wishes to call and how they will contradict Demuro, I am unable to rule on Myers' request.

**II.     Testimony of Steven Kaplan**

Myers seeks to call Steven Kaplan—who served as chief counsel to the Philadelphia Democratic City Committee for 20 years—as an expert witness or lay witness. (Doc. No. 46 at ¶ 2.) In recorded conversations between Myers and Demuro, the terms "ring em up" and "bang em up" were used. (Doc. No. 71 at 7.) Kaplan, who is offered as an expert on the Philadelphia election, will testify that these expressions typically mean "get out the vote" by ringing doorbells and knocking on doors. (Id. at 1, 7.) Kaplan will also testify as to: (1) how primary elections are

conducted in Philadelphia; (2) the number of votes in a primary election required to appear on the general election ballot; (3) the makeup of Philadelphia wards and divisions; (4) "how patronage jobs are distributed"; and (5) how "committee people are rewarded with patronage jobs for producing votes in their division on election day." (Id. at 3.)

The Government urges that Kaplan seeks to opine impermissibly on Myers' state of mind because his testimony "is proffered to contradict the meaning of phrases as they were understood and employed by the participants in the criminal ballot stuffing scheme by offering to the jury a different, more benign explanation." (Doc. No. 72 at 4.) The Government thus presumes that its interpretation of the disputed phrases is necessarily correct. I agree that Kaplan—assuming he is qualified to offer an expert or lay opinion—may not testify as to what Myers actually meant when he used the disputed phrases. Fed. R. Evid. 704; U.S. v. Watson, 260 F.3d 301, 309 (3d Cir. 2001) (quoting U.S. v. Bennett, 161 F.3d 171, 183 (3d Cir. 1998)) ("Expert testimony is admissible if it merely 'support[s] an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.'"). He likely may, however, testify as to how the disputed phrases are commonly used in Philadelphia elections. The Government frequently employs expert and lay witnesses to define terms used by those involved in illegal drug distribution. See Watson, 260 F.3d at 307–09; United States v. De Peri, 778 F.3d 963, 977 (3d Cir. 1985). As for the remainder of Kaplan's proposed testimony, I cannot, in the absence of any evidence from the Government, determine its relevance or admissibility.

Accordingly, I will defer until trial ruling on this defense request as well.

### III.     January 17, 2019 Recording

Finally, Myers moves to exclude the recording of a January 17, 2019 conversation between Demuro and Joe Cuccinotta, an election worker. (Doc. No. 87.) The Government does not intend to introduce the recorded conversation in its case-in-chief. (Doc. No. 88.) Accordingly, I will deny Myers' Motion as moot. Should the Government ask to introduce the recoding on rebuttal, it will be obligated to show its admissibility.

*     *     *

**AND NOW**, this 19th day of April, 2022, upon consideration of Defendant's Motion *In Limine* to Present Contradiction Witnesses (Doc. No. 46), the Government's Response (Doc. No. 61), Defendant's Motion *In Limine* to Admit Expert and Fact Witness Testimony (Doc. No. 71), the Government's Response (Doc. No. 72) and Defendant's Reply (Doc. No. 73), and Defendant's Motion *in Limine* to Bar Recordings (Doc. No. 87) and Government's Response (Doc. No. 88), it is hereby **ORDERED** that:

1. Decision on Defendant's Motion to Present Contradiction Witnesses (Doc. No. 46) is **DEFERRED to trial**;

2. Defendant's Motion to Admit Expert and Fact Witness Testimony (Doc. No. 71) is **DEFERRED to trial**; and

3. Defendant's Motion to Bar Recordings (Doc. No. 87) is **DENIED without prejudice as moot**.

**AND IT IS SO ORDERED.**

 /s/ Paul S. Diamond
Paul S. Diamond, J.