IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-210 |
| MICHAEL "OZZIE" MYERS | : | |

### GOVERNMENT'S PLEA MEMORANDUM

**I.  INTRODUCTION**

The defendant, Michael "Ozzie" Myers, is charged in a thirteen-count indictment with crimes arising out of his participation in ballot box stuffing schemes in south Philadelphia's 39th Ward, 36th Division and the 39th Ward, 2nd Division over several years. Defendant Myers was an influential political consultant who participated in the schemes with members of the Board of Elections in both polling stations, including the Judges of Elections and other board officials in those wards. Myers, through counsel, has indicated his desire to plead guilty to multiple counts in the superseding indictment as follows. The defendant agrees to plead guilty to Counts 1, 2, 8, 10, and 12 of the superseding indictment, charging him with conspiracy to deprive persons of civil rights, in violation of 18 U.S.C. § 241 (Count 1), Travel Act bribery, in violation of 18 U.S.C. § 1952(a)(3) (Count 2), obstruction, in violation of 18 U.S.C. § 1512(b)(3) (Count 8), falsification of voting records, and willfully causing the falsification of voting records, in violation of 18 U.S.C. §§ 1519 and 2 (Count 10), and conspiring to illegally vote in a federal election, in violation of 52 U.S.C. § 10307(c) (Count 12), all arising from his actions over a period of years in organizing and directing ballot stuffing schemes in south Philadelphia's 39th Ward, 36th Division and the 39th Ward, 2nd Division. A copy of the plea agreement is attached. A guilty plea hearing has been scheduled for June 6, 2022.

II. **ELEMENTS OF THE OFFENSES**

   A. **Conspiracy To Deprive Persons of Civil Rights (Count One: 39th Ward, 36th Division)**

Title 18, United States Code, Section 241 makes it a crime to "conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States . . . They shall be fined under this title or imprisoned not more than ten years, or both."

Here, to prove a violation of 18 U.S.C. § 241, the government must prove the following elements beyond a reasonable doubt:

   (1) The defendant entered into a conspiracy to willfully injure, impede, impair, and oppress, one or more victims, all voters of the 39th Ward, 36th Division in the City of Philadelphia; and

   (2) The defendant specifically intended by the conspiracy to interfere with the victims' free exercise and enjoyment of their right and privilege, secured under the Constitution and laws of the United States, of exercising their right to vote undiluted by false and fraudulent ballots and tallies in the 39th Ward, 36th Division in the City of Philadelphia.

*See* Pattern Crim. Jury Instr. 5th Cir. 2.11 (2012); *United States v. Wadena*, 152 F.3d 831, 843–47 (8th Cir. 1998); *United States v. Olinger*, 759 F.2d 1293, 1296–98 (7th Cir. 1985); *United States v. Stollings*, 501 F.2d 954, 955 (4th Cir. 1974).

   B. **Travel Act (Count 2: Bribery of Election Official in 39th Ward, 36th Division)**

Title 18, United States Code, Section 1952 prohibits interstate travel, the use of any other facility (such as a cell phone or the internet) capable of use interstate, and any use of the mails to further specified unlawful activity, including bribery in violation of state or federal law.

To prove a violation of 18 U.S.C. §1952, the government must prove the following elements beyond a reasonable doubt:

(1) Interstate/international travel, use of the mails, or the use of the facilities of interstate/foreign commerce such as a cell phone capable of use interstate;

(2) With the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on, of any unlawful activity; and

(3) Subsequent performance or attempted performance of an act, as defined by the statute.[1]

*See generally United States v. Xiong*, 262 F.3d 672, 676 (7th Cir. 2001); *United States v. Garcia*, 78 F.3d *1517, 1522 (11th Cir. 1996); United States v. Fetlow, 21 F.3d 243, 247 (8th Cir. 1994);* *United States v. Winslow*, 962 F.2d 845, 852 (9th Cir. 1992).

### C. Obstruction (Count 8)

Title 18, United States Code, Section 1512(b)(3) makes it a crime to persuade or attempt to persuade a person from reporting a crime to law enforcement officials.

To prove a violation of 18 U.S.C. §1512(b)(3), the government must prove the following elements beyond a reasonable doubt:

(1) The defendant knowingly engaged in misleading conduct toward another person;

(2) The defendant acted with the intent to hinder, delay, or prevent the communication of information to a law enforcement officer of the United States; and

(3) Such information related to the commission or possible commission of a Federal offense.

18 U.S.C. § 1512(b)(3); *see also United States v. Tyler*, 956 F.3d 116, 126 (3d Cir. 2020); *United States v. Farrell*, 126 F.3d 484, 487 (3d Cir. 1997); *United States v. Ronda*, 455 F.3d 1273, 1284

---

1 Here, bribery in violation of 18 Pa.C.S.A. §4701. Under Pennsylvania law, a person is guilty of bribery if he offers or confers "any pecuniary benefit as consideration for the decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter by the recipient." 18 Pa.C.S.A. § 4701(a)(1).

(11th Cir. 2006) (*citing United States v. Veal*, 153 F.3d 1233, 1253 (11th Cir. 1998), *cert. denied*, 526 U.S. 1147 (1999)).

### D. Falsification of Voting Records, and Willfully Causing Falsification of Voting Records (Count 10: False Election Records, 39th Ward, 2nd Division)

Title 18, United States Code, Section 1519 makes it a crime to "knowingly…make[] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States…or in relation to or contemplation of any such matter."

To prove a violation of 18 U.S.C. § 1519, the government must prove the following elements beyond a reasonable doubt:

(1) The defendant knowingly falsified a document;

(2) The document related to a matter within the jurisdiction of a federal agency; and

(3) The defendant falsified the document with the intent to impede, obstruct, or influence the investigation or the proper administration of the matter.

*See United States v. Moyer*, 674 F.3d 192, 210 (3d Cir. 2012).[2]

---

2 Here, Myers is culpable for "causing" others to commit falsification of records pursuant to 18 U.S.C. § 2(b). To show that Myers caused the criminal acts of another, the following elements must be satisfied.

(1) That acts constituting the offense of falsification of records as charged were committed by Marie Beren and others;

(2) That Michael "Ozzie" Myers had the mental state required for that offense that he caused Beren and others to commit. In this case that means the government must prove beyond a reasonable doubt that Myers acted knowingly; and

(3) That Myers willfully caused Marie Beren and others to commit the acts constituting falsification of records (state offense charged). In this case that means the government must prove beyond a reasonable doubt that Myers willfully caused Beren and others to falsify of voting records.

*See* Pattern Crim. Jury Instr. 3rd Cir. 7.05 (rev. 2018).

E. **Conspiring to Vote More Than Once in a Federal Election (Count 12: 39th Ward, 2nd Division)**

Title 52, United States Code, Section 10307(c) makes it a crime to conspire to vote illegally in a federal election by, among other things, voting more than once in violation of Subsection (e) of § 10307.

Title 52 U.S.C. § 10307(c)[3] provides that:

> Whoever knowingly or willfully gives false information as to his name, address or period of residence in the voting district for the purpose of establishing his eligibility to register or vote, ***or conspires with another individual for the purpose of*** encouraging his false registration to vote ***or illegal voting***, or pays or offers to pay or accepts payment either for registration to vote or for voting shall be fined not more than $10,000 or imprisoned not more than five years, or both: Provided, however, that this provision shall be applicable only to general, special, or primary elections held solely or in part for the purpose of selecting or electing any candidate for the office of President, Vice President, presidential elector, Member of the United States Senate, Member of the United States House of Representatives, Delegate from the District of Columbia, Guam, or the Virgin Islands, or Resident Commissioner of the Commonwealth of Puerto Rico.

52 U.S.C. § 10307(c) (emphasis added).

Subsection (e) of § 10307 ("Voting more than once") states that:

> (1) ***Whoever votes more than once*** in an election referred to in paragraph (2) shall be fined not more than $10,000 or imprisoned not more than five years, or both.
>
> (2) The prohibition of this subsection applies with respect to any general, special, or primary election held solely or in part for the purpose of selecting or electing any candidate for the office of President, Vice President, presidential elector, Member of the United States Senate, Member of the United States House of Representatives, Delegate from the District of Columbia, Guam, or the Virgin Islands, or Resident Commissioner of the Commonwealth of Puerto Rico.

---

[3] The federal statute at issue in Count 12 was formerly housed in Title 42 of the United States Code until September 1, 2014, when it was transferred to Title 52. The prohibited acts at issue in Title 52 U.S.C. were originally defined in 42 U.S.C. §1973i.

52 U.S.C. § 10307(e) (emphasis added).  The conspiracy provision of § 10307(c) applies to section (e)'s "illegal voting clause," which criminalizes precisely the type of conduct here in federal elections.  *See United States v. Olinger*, 759 F.2d 1293, 1298–1300 (7th Cir.1985).

To prove that defendant Myers conspired to vote more than once in a federal election in violation of 52 U.S.C. § 10307(e), the government must prove beyond a reasonable doubt the following elements:

> (1) Two or more persons agreed to vote more than once in violation of Title 52 U.S.C. § 10307(e);
>
> (2) Defendant Myers was a party to or member of that agreement; and
>
> (3) Defendant Myers joined the agreement or conspiracy knowing of its objective and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that a defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal or objective, to commit the offense of voting more than once.

*See United States v. Olinger*, 759 F.2d 1293, 1297 (7th Cir. 1985); *United States v. Odom*, 736 F.2d 104, 106 (4th Cir. 1984); *United States v. Smith*, 231 F.3d 800, 804–05 (11th Cir. 2000); *United States v. Salisbury*, 983 F.2d 1369, 1377 (6th Cir. 1993).  *See also* Mod. Crim. Jury Instr. 3rd Cir. 6.18.371A (2018).  Section § 10307(c) has no overt act requirement.

### III.   MAXIMUM PENALTIES

The Court may impose the following statutory maximum sentences: Count 1 (conspiracy to deprive persons of civil rights), 10 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment; Count 2 (Travel Act (bribery)), 5 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment; Count 8 (obstruction), 20 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment; Count 10 (falsification of voting records), 20 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and

a $100 special assessment; and Count 12 (voting more than once in an election), 5 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment.

<u>The total maximum sentence</u> is: 60 years' imprisonment, a three-year period of supervised release, $1,250,000 fine, and a $500 special assessment.

## IV. PLEA AGREEMENT

The government and the defendant have reached a plea agreement. A copy of the executed plea agreement with the essential terms is attached to this plea memorandum. Under the terms of the plea agreement, the defendant will plead guilty to Counts 1, 2, 8, 10, and 12 of the superseding indictment, charging him with conspiracy to deprive persons of civil rights in violation of 18 U.S.C. § 241 (Count 1), Travel Act bribery, in violation of 18 U.S.C. § 1952(a)(3) (Count 2), obstruction, in violation of 18 U.S.C. § 1512(b)(3) (Count 8), falsification of voting records, and willfully causing the falsification of voting records, in violation of 18 U.S.C. §§ 1519 and 2 (Count 10), and conspiring to illegally vote in a federal election, in violation of 52 U.S.C. § 10307(c) (Count 12). The agreement also sets forth the respective obligations of the parties and stipulations regarding the calculation of the certain aspects of the sentencing guidelines.

## V. FACTUAL BASIS FOR PLEA

If this case proceeded to trial, the government would present evidence to establish beyond a reasonable doubt each element of the offenses to which he is pleading guilty.[4]

---

[4] The factual background is also set forth at length in the Government's Trial Brief, ECF No. 99, 1-16, which we incorporate here.

Specifically, the evidence at trial would demonstrate that Myers, a former member of the U.S. House of Representatives from Pennsylvania's First District, hired himself out as a "political consultant." As a "consultant," Myers held himself out as an effective and successful political operative capable of ensuring his clients' electoral success. Myers' criminal efforts were generally, although not exclusively, directed at securing election victories for local judicial candidates running for Philadelphia's Court of Common Pleas or Municipal Court who had employed Myers as a "political consultant." Myers also exercised influence and control in Philadelphia's 39th Ward by distributing cash payments to various election officials and supporting family, friends, and allies for elective office in the 39th Ward. Myers installed Ward Leaders, Judges of Elections, and Democratic State Committee Persons in south Philadelphia Wards.

### 39th Ward, 36th Division

The government would present evidence that largely consists of: 1) the poll books for the 39th Ward, 36th Division; 2) the machine Results Receipts for the two voting machines in use at the 39th Ward, 36th Division; 3) the accounts of the DeMuros[5]; 4) toll records for Myers' cellular telephone; 5) Campaign Finance Reports (CFRs) for Myers' candidates; and 5) recordings made by Domenick DeMuro of his conversations with Myers heading into the 2016 general election and the 2017 election cycle.

The evidence would establish that Myers regularly solicited monetary payments as consulting fees from candidates for elective office. A significant portion of his clients were candidates for judgeships in Philadelphia's Court of Common Pleas or Municipal Court. The

---

5 As set forth below, Domenick DeMuro was the Judge of Election in the 39th Ward, 36th Division, who agreed to "ring up" votes for Myers's client candidates in exchange for bribe payments.

evidence will show that the payments from the candidates to Myers took the form of cash or checks, sometimes blank checks signed purportedly by a representative of the candidates' campaigns.

In the 39th Ward, after receiving the money, Myers would then take portions of these funds and make payments to Domenick DeMuro, who was the Judge of Election in the 39th Ward, 36th Division.[6] These payments from Myers could take the form of checks or, more frequently, cash. In return, DeMuro tampered with the election results in support of Myers' clients.

DeMuro would testify that after he received payments from Myers ranging from between $300 to $5,000 per election, he would "ring up" votes for Myers' preferred candidates by fraudulently and surreptitiously manipulating the vote totals on the Voting Machines in the 39th Ward, 36th Division. This increased the number of votes recorded for Myers' clients, thereby diluting and distorting the ballots cast by actual voters.

In the run up to Election Day, Myers would relay instructions to DeMuro via cellular telephones capable of interstate transmissions regarding which candidates DeMuro should "ring up" or add fraudulent votes for during Election Day in the 39th Ward.

More specifically:

● On May 20, 2014, DeMuro and/or his associates on the Board of Elections added 27 fraudulent ballots during the primary election in the 39th Ward, 36th Division, on behalf of Myers' preferred candidates running for judicial office in the First Judicial District of Pennsylvania. In other words, according to the numbers documented in the machine results, 118

---

6 As the Judge of Elections for the 39th Ward, 36th Division, DeMuro would recruit the other members of the Board of Elections from his family (including his spouse), friends, and neighbors to serve at that polling place.

9

voters exercised the franchise on Primary Election Day. The Results Receipts from the voting machines document 118 ballots cast during the primary election in the 39th Ward, 36th Division, even though only 91 voters physically appeared at the polling station to cast ballots. Those 91 voters who actually appeared had to sign the polling book. The ballot for this primary election included candidates for a federal elected office.

- On May 19, 2015, DeMuro and/or his associates on the Board of Elections added 40 fraudulent ballots during the primary election in the 39th Ward, 36th Division, on behalf of Myers' preferred candidates running for judicial office in the First Judicial District of Pennsylvania. DeMuro would testify that prior to this election, Myers gave him a total of $2500 to add votes to three judicial candidates that Myers acted as a consultant for. DeMuro would testify that his Election Board turned in to the office of the Philadelphia City Commissioners the Results Receipts from voting Machine # 021873 and Machine # 021874. The Results Receipts from the machines documented 259 ballots cast during the primary election in the 39th Ward, 36th Division, even though only 219 voters physically appeared at the polling station to cast ballots, as reflected in the polling book. The ballot for this primary election did not include a candidate for federal elective office.

- DeMuro would testify that on April 26, 2016, he and/or his associates on the Board of Elections added 46 fraudulent ballots during the primary election in the 39th Ward, 36th Division, on behalf of Myers' preferred candidates. DeMuro would testify that he received payments from Myers to "ring up votes" on the 2016 primary ballot. After the polls closed, DeMuro and his Election Board turned in to the office of the Philadelphia City Commissioners the Results Receipts from voting Machine # 021873 and Machine # 021874. The Results Receipts documented 266 ballots cast during the primary election in the 39th Ward, 36th Division, even

though only 220 voters physically appeared at the polling station to cast ballots as reflected in the polling book. The ballot for this primary election included candidates for a federal elected office.

As noted, the government would play audio recordings that were consensually made by DeMuro of his conversations with Myers heading into the 2016 general election and the 2017 election cycle. In the recordings, Myers: a) instructed DeMuro not to discuss the "ballot stuffing" over the telephone; b) advised DeMuro to conceal the receipt of money from Myers by providing fictitious names to be listed as the payee on checks drawn on the campaign accounts of defendant Myers' preferred candidates and unwitting clients by telling DeMuro, "I'm gonna get you a couple checks there's no question about that. If you want to give me a - a different name than Domenick DeMuro that's your business…;" c) advised DeMuro that defendant Myers would hand DeMuro payments in the form of checks after the deadline for the last campaign finance report prior to the May 2017 primary election because, "you don't wanna - you don't wanna be on any [candidate's campaign finance] report May 7th when the election is May 16th;" d) had DeMuro sign receipts for bribe payments in the form of cash and instructing DeMuro that "if there was ever a question Dom . . . you know you'd say well I gave the money out Election Day [to get out the vote];" and, e) provided a check to DeMuro drawn on the campaign account of defendant Myers' client candidate and made payable to DeMuro's spouse and later falsely characterized on the unwitting candidate's campaign finance report as supporting a "get out the vote" effort.

### 39th Ward, 2nd Division

The government's evidence would show that Myers joined with Marie Beren, formerly the Judge of Elections for the 39th Ward, 2nd Division, to manipulate the vote totals on the Voting

Machines in Philadelphia's 39th Ward, 2nd Division, to increase the number of votes recorded for certain candidates. In approximately 1988, defendant Myers recruited Marie Beren to serve as a Judge of Elections for Philadelphia's 39th Ward, 2nd Division. Records and witness accounts at trial would establish that Marie Beren formally served as the Judge of Elections for Philadelphia's 39th Ward, 2nd Division from 1988 through 2015. Beginning in approximately 2010, the polling location for the 39th Ward, 2nd Division moved to the Seafarer's Union Hall located at 4th and Shunk Streets in Philadelphia, Pennsylvania. The Seafarer's Union Hall was also the polling location for the 39th Ward, 11th Division and the 39th Ward, 16th Division. The evidence would show that Beren became the de facto Judge of Elections for all three divisions. Even after Beren stepped down from her position following the 2015 Primary Election, she continued to operate as the de facto Judge of Elections from a position as a poll watcher.

While Marie Beren effectively ran the polling places for Philadelphia's 39th Ward, 2nd Division, the 39th Ward, 11th Division, and the 39th Ward, 16th Division, defendant Myers gave Beren directions to add votes to candidates supported by him, including candidates for judicial office whose campaigns actually hired Myers, and other candidates for various federal, state, and local elective offices preferred by Myers for a variety of reasons.

Beren would testify that on almost every Election Day, Myers transported her to the polling station to open the polls. During the drive to the polling station, Myers would advise Beren which candidates he was supporting so that Beren knew which candidates should be receiving fraudulent votes.

While the polls were open, Marie Beren would advise actual in-person voters to support Myers' candidates and also cast fraudulent votes in support of Myers' preferred candidates on behalf of voters she knew would not or did not physically appear at the polls.

During Election Day itself, Myers conferred with Beren via cellular telephone while she was at the polling station about the number of votes cast for his preferred candidates. Beren would report to Myers how many "legit votes," meaning actual voters, had appeared at the polls and cast ballots. If actual voter turnout was high, Beren would add fewer fraudulent votes in support of Myers' preferred candidates. From time to time, Myers would instruct Beren to shift her efforts from one of his preferred candidates to another. Specifically, Myers would instruct Beren "to throw support" behind another candidate during Election Day if he concluded that his first choice was comfortably ahead.

Marie Beren would testify that she and the individuals she recruited to serve as Election Board Officials would falsify the polling books and the List of Voters and Party Enrollment for the 39th Ward, 2nd Division, by recording the names, party affiliation, and order of appearances for voters who had not physically appeared at the polling station to cast his or her ballot in the election. Beren would then cast fraudulent ballots purportedly on behalf of these eligible voters who had not, in fact, appeared in person to cast ballots themselves. Beren took pains to ensure that the number of ballots cast on the machines was a reflection of the number of voters signed into the polling books and the List of Voters.

After the polls closed on Election Day, Marie Beren would certify the Voting Machine results from the 39th Ward, 2nd Division, by attesting to the accuracy of the paper results receipt placed in the Cartridge-Results Bag with the memory cartridge from each Voting Machine for delivery to the City Commissioners.

Specifically, Beren would testify that she followed Myers' instructions during the election held on November 7, 2017 which resulted in fraudulent votes being cast and tabulated

on behalf of Myers' preferred candidates.[7] Consequently, Myers' accomplices and co-conspirators falsified the polling books and the List of Voters and Party Enrollment for the 39th Ward, 2nd Division, by recording the names, party affiliation, and order of appearances for voters who had not physically appeared at the polling station to cast his or her ballot in that election.

Similarly, on November 6, 2018,[8] Myers' accomplices and co-conspirators cast fraudulent votes on behalf of Myers' preferred candidates. They also falsified the polling books and the List of Voters and Party Enrollment for the 39th Ward, 2nd Division, by recording the names, party affiliation, and order of appearances for voters who had not physically appeared at the polling station to cast his or her ballot during that election.

In addition, the government would produce the poll books and Lists of Voters and Party Enrollment for the 39th Ward, 2nd Division, the machine Results Receipts for the voting machines in use at the 39th Ward, 2nd Division, toll records for Myers' cellular telephone showing his contacts with Beren during Election Day, Campaign Finance Reports (CFRs) for Myers' client candidates, and the testimony of eyewitnesses, including eligible, registered voters who were signed into the poll books and who appear on the lists of voters even though they did not, in fact, cast ballots.

This memorandum sets forth only the essential facts that would need to be proved to establish the elements of the offenses charged.

---

[7] The ballot for this election did not include a candidate for federal elective office.

[8] The ballot for this election included candidates for federal elective office.

## V.  CONCLUSION

For the foregoing reasons, the government requests that the Court accept the defendant's plea of guilty.

Respectfully Submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney


 *s/ ERIC L. GIBSON*
ERIC L. GIBSON
RICHARD P. BARRETT
Assistant United States Attorneys

Date: June 3, 2022

CERTIFICATE OF SERVICE

I certify that on this day I caused a copy of the United States' Plea Memorandum to be served by e-mail on the following attorneys:

        Arnold Silverstein, Esquire
        Noah Gorson, Esquire

                      *s/ ERIC L. GIBSON*
                      ERIC L. GIBSON
                      Assistant United States Attorney

Date: June 3, 2022