Noah Gorson, Esquire
Identification No. 34323
email ng@gorsonlaw.com
Arnold Silverstein, Esq
Identification No.
email arnold.silverstein@gmail.com
123 S. Broad Street #2140
Philadelphia, PA 19109
(215) 569-4661                                                                          Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| VS. | : | CRIMINAL NO. 20-CR-210 |
| MICHAEL "OZZIE" MYERS" | : | |

**SENTENCING MEMORANDUM AND MOTION FOR VARIANCE FROM SENTENCING GUIDELINE PER 3553**

Through counsel, Mr. Myers, files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). The purpose of this memorandum is to aid the Court in imposing a fair sentence, but one not greater than necessary to meet its goals at sentencing.

Post Booker district courts must engage in the following three step process when determining an appropriate sentence: (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker. (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure . . .. (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines. See *United States v. Gunter,* 462 F.3d 237, 247 (3d Cir. 2006).

The Court has the power to exercise its discretion by granting a variance from the sentencing guidelines after considering the sentencing factors stated in 18 USC 3553. United States v. Bauer, 2013 U.S. App. LEXIS 13401 (3d Cir. N.J. June 27, 2013). It is important to emphasize that § 3553(a) provides that "a court must impose a sentence that is 'sufficient but not greater than necessary, to comply with purposes of sentencing.' This requirement is often referred to as 'the parsimony provision,' and the Supreme Court has referred to it as the 'overarching instruction' of 18 U.S.C. § 3553(a)." United States v. Olhovsky, 562 F.3d 530 (3d Cir. 2009) at 547-48 (citing *Kimbrough v. United States,* 552 U.S. 85, 101, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007)).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:
(A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct;
(C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. In determining the minimally sufficient sentence, §3553 (a) further directs sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§3553(a)(1));

2) "the kinds of sentences available" (§3553(a)(3)); 3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§3553(a)(6)); and 4) "the need to provide restitution to any victims of the offense" (§3553(a)(7)).

In applying these sentencing factors, the defense respectfully requests the Court follow the Supreme Court's overarching instruction not to impose a sentence greater than necessary to comply with the purposes of sentencing. In addition, the ABA Standard 18-2.4 states about sentencing: *The legislature should ensure that maximum authorized levels of severity of sentences and presumptive sentences are consistent with rational, civilized, and humane values. Sentences authorized and imposed, taking into account the gravity of the offenses, should be no more severe than necessary to achieve the societal purposes for which they are authorized.*

In sentencing Petitioner, the Court should not consider rehabilitation as a factor to support imprisonment. Under 18 U.S.C. §3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recognize that imprisonment is *not* an appropriate means of promoting correction and rehabilitation." *Tapia v. United States, 1*31 S.Ct. 2382 (2011).

In sum, in every case, a sentencing court must now consider all the §3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors," *United States v. Cooper,* 437 F.3d 324, 329 (3d Cir. 2006), and that they were reasonably applied to the circumstances of the case.  [A] within- guidelines sentence is not necessarily reasonable per se." Id. at 331.

**Application of the Statutory Sentencing Factors to the Facts of this Case**

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

I. CALCULATION OF SENTENCE
1. Calculation of the Sentencing Guidelines/Mandatory Sentence. a. There are no mandatory sentences attached to Mr. Meyer's guilty plea.

b. For group I and II the adjusted offense levels equal 20.[1] The combined offense level is 22.

c. There are no enhancements.

d. Mr. Myers accepted responsibility for his conduct and is entitled to a 2-point reduction per 3E1.1(a).

e. Mr. Myers assisted the Government in investigation of his own misconduct by timely advising the Government of his intention to plead guilty. Because of this he is entitled to an additional point off per 3E1.1(b).

d. Mr. Myers' total offense level is 19.

2. Calculation of Mr. Myers? Criminal History.

---

[1] SEE PARAGRAPHS 42-68 OF THE PSI.

a. Mr. Myers has no juvenile history.

b. Mr. Myers was charged with assault in Virginia on 2/15/79. He entered a Nolo plea and the case was suspended (discharged) based on 6 months good behavior. Zero points.

c. On June 5, 1980 he was charged and subsequently convicted of Bribery, Conspiracy, and Interstate Transportation in aid of bribery. Per 4A1.2(e)(3) he gets Zero points.

d. The total criminal history score is zero. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I.

a. Sentencing Range: Guideline Provisions: Based upon a total offense level of 19 and a criminal history category of I, the guideline imprisonment range is 30 months to 37 months.

b. Defendant's guideline range is in Zone D. A sentence of house arrest is normally prohibited; however, post Booker the Court has the power to grant a variance and sentence Mr. Myers to house arrest.

### I. The Nature and Circumstances of the Offense and the History and Characteristics of the Offender

1. Nature and circumstances of the offense.

On July 21, 2020, a federal grand jury sitting in the Eastern District of Pennsylvania returned an 8-count Indictment charging Michael "Ozzie" Myers with the following offenses: conspiracy to deprive persons of civil rights, in violation of 18 U.S.C. § 241 [Count 1]; Travel Act and aiding and abetting, in violation of 18 U.S.C. §§ 1952(a)(3) and 2 [Counts 2 and 4]; falsification of records and aiding and abetting, in violation of 18 U.S.C. §§ 1519 and 2 [Counts 3 and 5]; voting more than once in a federal election and aiding and abetting, in violation of 52 U.S.C. § 10307(e) and 18 U.S.C. § 2 [Count 6]; conspiracy to illegally vote in federal election and aiding and abetting, in violation of 52 U.S.C. § 10307(c) and 18 U.S.C. § 2 [Count 7]; and obstruction and aiding and abetting, in violation of 18 U.S.C. §§ 1512(b)(3) and 2 [Count 8].

On October 12, 2021, a federal grand jury sitting in the Eastern District of Pennsylvania returned a 13-count Superseding Indictment charging Michael "Ozzie" Myers with the following offenses: conspiracy to deprive persons of civil rights, in violation of 18 U.S.C. § 241 [Counts 1 and 9]; Travel Act and aiding and abetting, in violation of 18 U.S.C. §§ 1952(a)(3) and 2 [Counts 2 and 4]; falsification of voting records and aiding and abetting, in violation of 18 U.S.C. §§ 1519 and 2 [Counts 3, 5, 10, and 13]; voting more than once in a federal election and aiding and abetting, in

violation of 52 U.S.C. § 10307(e) and 18 U.S.C. § 2 [Counts 6 and 11]; conspiracy to illegally vote in federal election and aiding and abetting, in violation of 52 U.S.C. § 10307(c) and 18 U.S.C. § 2 [Counts 7 and 12]; and obstruction and aiding and abetting, in violation of 18 U.S.C. §§ 1512(b)(3) and 2 [Counts 8 and 13].

Offense conduct refer to paragraphs 13 through 37 of the PSI, which are incorporated as though fully set out herein.

The defendant is entitled to an Adjustment for Acceptance of Responsibility as he admitted his participation in the instant offenses at the guilty plea hearing. Although during the presentence investigation interview, the defendant did not provide a formal statement regarding his acceptance of responsibility, on August 8, 2022, defense counsel provided a statement prepared by the defendant on August 7, 2022

2. History and Characteristics of Michael Myers:

a. Personal and family history:

Defense moves to incorporate paragraphs 83 through 99 of the pre-sentence report as though each paragraph was set out herein.

b. Defendant's physical condition:

Defense moves to incorporate paragraphs 101 through 108 of the pre-sentence report as though each paragraph was set out herein. In addition, Mr. Myers underwent an anterior cervical discectomy with fusion on December 1, 2021, and, although the procedure was successful, he remains in considerable pain and with limitations of motion. As a result, at his most recent post-operative examination by his local neurosurgeon he was referred to Dr. Nitin Goyal, 200 Willowbrook Lane, Ste. 210, West Chester, PA for pain management. On September 14, Dr. Goyal conducted an examination and discussed a course of treatment that included nerve block injections and physical therapy. Furthermore, due to the retirement of Mr. Myers primary care physician he has be unable to schedule an annual exam with a replacement physician until October 7 at which time he is scheduled to see - Dr. Patrick Gray, Delancey Internal Medicine South, 1930 S. Broad St., Unit 14, Phila., PA 19145.

c. Defendant's mental condition:

Defense moves to incorporate paragraphs 109 through 110 of the pre-sentence report as though each paragraph was set out herein.

d. Substance abuse:

 Defense moves to incorporate paragraphs 111 through 113 of the pre-sentence report as though each paragraph was set out herein.

e. Educational, vocational, and special skills:

 Defense moves to incorporate paragraphs 114 through 115 of the pre-sentence report as though each paragraph was set out herein.

f. Employment record:

 Defense moves to incorporate paragraphs 116 through 120 of the pre-sentence report as though each paragraph was set out herein.

3. The Need for the Sentence Imposed to Promote Certain Statutory Objectives.

 The sentence must reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense. It must afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant. The sentencing guidelines are overly weighted towards lengthy imprisonment as the only solution to any offense.

 Mr. Myers pled guilty to a nonviolent, non-drug crime. There was no violence or threat of violence attached to his crimes. His criminal acts solely involved adding votes. It must be stressed that the number of votes added were less than 100 in primary elections where the number of votes needed to win the primary election were in excess of 20,000. The false votes did not in any way effect election results. The purpose of the statute is to deter voter fraud, related obstruction of voter fraud and bribery in furtherance of voter fraud. In this case the statutory objectives can be met by imposing a sentence of house arrest, and a fine. Such a sentence would deter this crime by alerting other politicians/operatives that voter fraud will lead to prosecution, job loss and other financial hardships. The deterrent effect of a potential prosecution far outweighs a jail sentence by showing "political people" willing to take shortcuts to get extra votes the real possibility that they will lose their jobs, political careers.

 As to personal deterrence it would appear based on his extreme advanced age, minor criminal history, community involvement the need for individual deterrence is almost nonexistent. Based on his age, background, and family it is highly unlikely he will be involved in future crimes. This is also evidenced by his guilty plea and acceptance of responsibility.

## MOTION FOR VARIANCE

Variance from the guidelines based on 3553 factors: Applying the 3553 factors to our case supports a downward variance for Mr. Myers. First, in sentencing Mr. Myers the Court should consider his age and physical condition. In paragraph 144 of the PSI the probation officer stated the following in relation to grounds that may warrant a sentence outside the advisory guidelines: "The Court may wish to consider that the defendant is a 79-year-old male who suffers from multiple medical conditions (PSI para 101-08) which require both medication and monitoring, as well as his responsibilities as they relate to his wife, who also is elderly."

Throughout his life Mr. Myers used his political influence to help those less fortunate than him obtain jobs. [2] Mr. Myers also used his political influence to make his community a safer cleaner place for the people to live. See letter from Bobby Voong outlining the help Mr. Myers has provided to the Asian Community in his neighborhood. See letter from Bishop L.C. Wright, Jr. who states Mr. Myers has always helped in and aided various neighborhood events. See letter from Anthony Bradley, 2004 assistant Olympic boxing coach, who describes all the good things Mr. Myers has done through the years to help young people in his neighborhood. See letter from Clinton Brown another young man Mr. Myers helped mentor as well as helped him get a job through the teamsters' union. Mr. Brown has helped many people and attributes this to Mr. Myers influence. See the letter Ignacio Perez who details how Mr. Myers helped "Nacho's family" overcome racial prejudice in the neighborhood. In addition, attached are numerous from letters from family, friends, neighbors and community detailing Mr. Myers' character as kind, genuine, caring person, supportive and, except for the activities which brought him to court, a productive member of the community. (Copies of letters from friends, neighbors and community are attached hereto as Exhibit "A" and copies of letters from family are attached hereto as Exhibit "B".)

Though he has a prior conviction he has a positive background. He is 79 years old, has a family with three children and has always worked, including the period between 85-2000 where he was forced to work odd jobs to earn a living because he had no steady job.

Mr. Myers' daughter described her family growing up as a good family life. The family ate dinner together, the kids were raised with discipline and the children participated in sports.

The Court should grant a downward variance and impose a sentence of house arrest because of Mr. Myers age and physical condition, his lack of a significant criminal history, his community activity, his work history, and the need for him to help take care of his wife (The defendant reported that his wife currently suffers from a myriad of medical issues, including asthma, atrial fibrillation, hypertension, and cancer).

---

[22] The Government's chief prosecution witness acknowledges Mr. Myers helped him obtain employment in the early 1970's See DeMuro grand jury p.16

RESPECTFULLY SUBMITTED:

**BY:**   /s/ *Noah Gorson*
      NOAH GORSON, ESQUIRE
      ATTORNEY FOR DEFENDANT


**BY:**   /s/ *Arnold Silverstein*
      ARNOLD SILVERSTEIN, ESQUIRE
      ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing Memorandum was served upon the following in the manner indicated on today's date of September 17, 2022:

ECF
**Honorable Paul S. Diamond**
U.S. Courthouse
601 Market Street, Room 14614
Philadelphia, PA 19106-1773

ECF
Department of Justice
United States Attorney=s Office
Eastern District of Pennsylvania
**Assistant United States Attorney**
**Eric Gibson, Esq.**
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476

      **BY:**   */s/ Noah Gorson*
                  NOAH GORSON, Esquire